**CITIES SERVICE GAS COMPANY, a Delaware corporation**

v.

**The UNITED STATES.**

**No. 40–73.**

United States Court of Claims.

July 19, 1974.

As Amended on Denial of Rehearing Oct. 4, 1974.

Before COWEN, Chief Judge, and SKELTON and KASHIWA, Judges.

SKELTON, Judge:

This suit was filed by plaintiff, Cities Service Gas Company, against the United States, defendant, on an alleged implied in fact contract to recover on a *quantum meruit* basis compensation for the sale of natural gas to the Department of the Army at Fort Leavenworth, Kansas, from March 15, 1971, to the present time. The defendant filed a Motion to Dismiss plaintiff's case on the ground we lacked jurisdiction of the case. The plaintiff filed a Motion for Partial Summary Judgment on the issue of liability. Whereupon, the defendant filed an alternative Motion to Remand the Proceedings to the Federal Power Commission (FPC). The case was submitted to the court on these pleadings, together with briefs and oral argument. Thereafter, on March 1, 1974, the court issued an order stating that if within 90 days from the date of the order the Department of the Army files with the FPC an application under section 7(a) of the Natural Gas Act for a determination that the gas involved in this case is within the jurisdiction of the FPC, proceedings in this case shall be suspended for a period of not more than six months from the date the application is filed with the FPC.

On April 12, 1974, plaintiff filed an Application for Rehearing of the Order Suspending Proceedings. The defendant contested plaintiff's application. Both parties submitted briefs.

On May 24, 1974, the Department of the Army filed an application with the FPC under section 7(a) of the Natural Gas Act for a Certificate of Public Convenience and Necessity directing the plaintiff herein to sell and deliver to the applicant at jurisdictional rates the volume of natural gas in interstate commerce estimated to be required for "sale, resale, and distribution" at Fort Leavenworth, Kansas. From an analysis of

Melvin Richter, Washington, D. C., attorney of record for plaintiff; Littman, Richter, Wright & Talisman, Washington, D. C., Alfred O. Holl, Tulsa, Okl., and Daniel R. Hopkins, Oklahoma City, Okl., of counsel.

John W. Showalter, Washington, D. C., with whom was Asst. Atty. Gen., Carla A. Hills, for defendant.

FPC opinion No. 489, it is clear that this section 7(a) proceeding applies *prospectively only* and that it can have no effect on the charges for gas sold by plaintiff to the Army before the institution of these proceedings, nor to charges in the future for direct sales to the Army for its own use.

After carefully considering the briefs of the parties, oral argument, and the section 7(a) proceedings filed by the Army on May 24, 1974, described above, the court concludes that the suspension order should be withdrawn and canceled and that the case should be decided on the merits. The court further concludes that judgment should be entered in favor of the plaintiff. A discussion of the facts and the law follows:

Plaintiff is a natural gas company and sells gas in interstate commerce. The rates for such sales *for resale* are subject to regulation by the FPC under the Natural Gas Act, 15 U.S.C. § 717 et seq. The rates for gas sold for *direct use* (not for resale) are not subject to regulation by the FPC.

For many years, the plaintiff sold gas in interstate commerce to the Army at Fort Leavenworth, Kansas, under two written contracts, namely: (1) a contract for the sale of gas on a *firm* basis (*i. e.*, without interruption) for use in Army facilities (exclusive of its Disciplinary Barracks), which sale is hereafter described as the Fort Leavenworth sale (the Army resold 6.7 percent of this gas to private users); (2) a contract for the sale of *interruptible* gas to the Army for its Disciplinary Barracks (Disciplinary Barracks sale). The gas sold under this contract was for direct use by the Army and none of it was resold.

Until September 1963, both parties considered that the rates for the gas sold under both contracts were not subject to regulation by the FPC because they were sales for direct consumption and use by the Army. However, in September 1963, the defendant instituted proceedings before the FPC (FPC Docket No. RP64–17) claiming that the FPC should treat these sales as *sales for resale* subject to its rate jurisdiction.

The FPC issued its opinion No. 489 in which it held that sales of gas not resold but consumed by the purchaser are direct sales and are not subject to FPC's jurisdiction. It stated that the Disciplinary Barracks sales were not jurisdictional sales for resale, but were non-jurisdictional direct sales. As to the Fort Leavenworth sales, the FPC found that a small part of the gas was resold by the Army. However, it declined to hold that the commingling of the gas that was resold with the other gas converted the entire sales to jurisdictional sales for resale. The FPC took the position that before gas could be sold for resale, the FPC would have to authorize it and that had not been done in this case. Therefore, it held that the entire sale by the plaintiff "must be treated as a sale for the Army's own use." In this regard, the FPC held:

> Since it seems clear, * * *, that prior to the initiation of the Army's complaint herein, the Commission had not consciously authorized any sale for resale, the entire sale by Cities to the Army up to the time appropriate relief procedures, if necessary, are prescribed, *must be treated as a sale for the Army's own use.* [Emphasis supplied.]

Notwithstanding the decision of the FPC, the Army continued to insist that *all* the gas must be treated as resale gas subject to plaintiff's jurisdictional rates on file with the FPC.[1] Negotiations be-

---

1. Plaintiff's most recent tariff on file with the FPC lists the following rates for sales of natural gas in the Leavenworth, Kansas area: "Firm, 30.97 cents per Mcf (thousand cub. ft.); Interruptible, 28.16 cents per Mcf."

Source: 36 Fed.Reg. 22792 (Nov. 19, 1971), rehearing denied, 37 Fed.Reg. 307 (Jan. 8, 1972).

tween the parties failed, and plaintiff gave notice in writing to the Army that it was terminating the contracts on March 15, 1971, but that it would continue the Disciplinary Barracks and Fort Leavenworth sales after that date but would expect to be paid the reasonable price of 50 cents per Mcf (thousand cubic feet) for firm gas and 30 cents per Mcf for interruptible gas. The Army replied by letter that it "had no intention whatsoever to permit or consent to any reduction or abandonment of service by your company at Ft. Leavenworth," and that rates of 31 cents per Mcf and 23.081 cents per Mcf would apply.

The parties never reached an agreement on the price for the gas, although plaintiff has continued to deliver gas to the Army at the Disciplinary Barracks and Fort Leavenworth, and the Army has continued to accept such gas up to the present time, even though there were no written contracts in existence. The plaintiff alleges that up to November 22, 1972, it had delivered 1,171,525 Mcf of interruptible natural gas to the Army at Fort Leavenworth and the Disciplinary Barracks. The Army accepted the gas and tendered $510,617.19 for the gas. The plaintiff contends that based on a *quantum meruit* price of 50 cents per Mcf for firm gas and 30 cents per Mcf for interruptible gas, the Army owed plaintiff $652,307.30 for the gas delivered up to such date. The amount tendered by the Army left an unpaid balance of $141,690.11. The plaintiff sues here to recover this balance, plus the unpaid balance that has accrued at the same *quantum meruit* rate for gas delivered since November 22, 1972, up to the present time. The plaintiff has accepted the amounts previously tendered as partial payments only, reserving its right to claim additional amounts.

The defendant contends that this court does not have jurisdiction of this case. On the other hand, the plaintiff says we have jurisdiction of the case because it is a suit based on a contract implied in fact. The defendant disputes this argument. We agree with the plaintiff. We have jurisdiction under the Tucker Act, 28 U.S.C. § 1491 of claims against the United States, "[founded] upon any express or implied contract with the United States." Although we do not have jurisdiction of contracts *implied in law*, it is well established that we have jurisdiction of contracts *implied in fact. See* United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 46 S.Ct. 501, 20 L.Ed. 911 (1926), wherein the Supreme Court held:

> * * * An implied contract in order to give the Court of Claims or a district court under the Tucker Act jurisdiction to give judgment against the government must be one implied in fact and not one based merely on equitable considerations and implied in law. Merritt v. United States, 267 U.S. 338, 340, 341, 45 S.Ct. 278, 69 L. Ed. 643; Temple v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; Sutton v. United States, 256 U.S. 575, 581, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403. * * * [*Id.* at 217–218, 46 S.Ct. at 503.]

In Algonac Mfg. Co. v. United States, 428 F.2d 1241, 192 Ct.Cl. 649 (1970), we held:

> * * * This court does have jurisdiction of claims based on contracts implied in fact. * * * [Cases omitted.] [*Id.* 428 F.2d at 1256, 192 Ct.Cl. at 674.]

*See also* J. C. Pitman & Sons, Inc. v. United States, 317 F.2d 366, 161 Ct.Cl. 701 (1963). It is unnecessary to cite additional authorities for this proposition, as there is no longer any question about our having jurisdiction over claims based on contracts implied in fact.

The next question to be considered is whether or not plaintiff's claim is based on a contract implied in fact between the plaintiff and the Army. We conclude that this question must be answered in the affirmative. The Supreme Court defined a contract implied in fact in Baltimore & Ohio R. R. v. United

States, 261 U.S. 592, 597, 43 S.Ct. 425, 427, 67 L.Ed. 816 (1923), as follows:

> * * * [A]n agreement "implied in fact," founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding. * * *

In the present case, the facts show that plaintiff sold and delivered gas to the Army as Fort Leavenworth sales under a written contract from 1928 until March 15, 1971, and it sold and delivered gas to the Army as Disciplinary Barracks sales from 1940 until March 15, 1971. Both contracts were terminated by the plaintiff on the last stated date. However, the parties negotiated with each other for continued sales and purchases. Letters were exchanged in which plaintiff stated it would continue to sell and deliver gas to Fort Leavenworth and to the Disciplinary Barracks even though there was no written contract between the parties. The Army not only agreed to accept the deliveries of the gas, but also demanded that the plaintiff continue to make the sales and deliveries, saying in a letter dated January 12, 1971 that:

> You are hereby informed that the Army has no intention whatsoever to permit or consent to any reduction or abandonment of service by your company at Fort Leavenworth.

Following this exchange of letters, the plaintiff continued to make the sales and deliveries of gas to the Army at Fort Leavenworth as it had done under the written contracts and has continued to do so up to the present time; and the Army has accepted the gas deliveries and has issued checks to the plaintiff in payment therefor. The dispute is over the amount due for the gas.

We conclude that these facts show a "meeting of the minds" of the parties that the plaintiff would sell and deliver the gas to the Army at Fort Leavenworth and the Army would purchase and accept delivery of the gas and pay plaintiff for it. These facts establish a clear case of a contract implied in fact, and we so hold.

■■■■ The defendant contends that if we allow the plaintiff to recover in this case, the court would be fixing rates for the sale of gas transported and sold in interstate commerce, and that such procedure would violate the law that confers exclusive jurisdiction on the FPC on all gas moving and sold in interstate commerce. It cites United States v. Western Pacific R. R., 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) and Union Pacific R. R. v. United States, 111 F.Supp. 266, 268, 125 Ct.Cl. 390, 393 (1955) as holding that this court has no power to fix rates. The court recognizes this principle and agrees with it. However, the court does not intend to fix any rates in this case and will not do so. The defendant cites Federal Power Commission v. Amerada Petroleum Corp., 379 U.S. 687, 85 S.Ct. 632, 13 L.Ed.2d 605 (1965); Louisiana Public Service Comm. v. Federal Power Commission, 359 F.2d 525 (5th Cir. 1966), cert. denied, 385 U.S. 833, 87 S. Ct. 73, 17 L.Ed.2d 68; Louisiana Power & Light Co. v. Federal Power Commission, 483 F.2d 623 (5th Cir. 1973), cert. denied, 416 U.S. 974, 94 S.Ct. 2001, 40 L.Ed.2d 563 (1974) and other cases for the general proposition that the FPC has jurisdiction of all gas moving in a pipeline in interstate commerce even if interstate gas and intrastate gas are commingled and even if the interstate gas is only a small part of the total gas in the pipeline. We find no difficulty with this proposition and agree that it is the law. However, this does not tell the whole story. The jurisdiction vested in the FPC authorized it to control the movement and transportation, measurement, curtailment, quantity, certification, and abandonment of sale of gas moving in interstate commerce or in an interstate pipeline, but the FPC has no authority or jurisdiction to fix the rates of all gas sold in interstate commerce. It has no power or jurisdiction to fix rates for di-

rect sales where the gas is used by the purchaser. In this regard, section 1(b) of the Natural Gas Act provides in pertinent part:

(b) The provisions of this chapter shall apply * * * to the sale in interstate commerce of natural gas *for resale * * *, but shall not apply to any other * * * sale of natural gas * * *.* [Emphasis supplied.] [15 U.S.C. § 717(b) (1970).]

The FPC in its opinion No. 489 in this case held:

Sales of the gas not resold but consumed by the purchaser, *i. e., direct sales, are not subject to Commission jurisdiction.* F.P.C. v. Transcontinental Gas Pipe Line Corp., 365 U.S. 1, 4 [81 S.Ct. 435, 5 L.Ed.2d 377] (1961). [Emphasis supplied.]

In Federal Power Commission v. Louisiana Power & Light Co., 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972), the Supreme Court made it very clear that the FPC had no power to set rates for *direct sales* of gas in interstate commerce. In that case the court held:

* * * [T]he prohibition of the proviso of § 1(b) withheld from FPC only *rate-setting* authority with respect to direct sales. Curtailment regulations are not *rate-setting* regulations * * *. *[Id.* at 637–638, 92 S.Ct. at 1837.] [Emphasis in original.]

* * * Congress enacted a federal "sales" jurisdiction in the Natural Gas Act, by which Congress granted *rate-setting* authority to the Commission over all interstate sales for resale. But as this Court, in Pennsylvania Gas Co. v. Public Service Comm'n, 252 U.S. 23, 40 S.Ct. 279, 64 L.Ed. 434 (1920), had sustained state authority to regulate rates for "direct" sales, and, moreover, the need for federal authority here was not deemed acute, Congress withheld *rate-setting* jurisdiction over direct sales. That rate setting was the only subject matter covered by "sales" jurisdiction and the "direct sales" excep-

tion is clear from the legislative history of the proviso. * * * *[Id.* at 639, 92 S.Ct. at 1837.] [Emphasis in original.]

In its Motion for Remand, the defendant relies heavily on the case of Louisiana Power & Light Co. v. Federal Power Commission, *supra,* to show general jurisdiction in the FPC over gas moving in interstate commerce. However, that case only involved the *transportation* of gas and not the setting of rates for its sale. Nevertheless, the court in that case said:

* * * [I]t must be remembered that *the FPC does not regulate the price of sales to direct customers* such as large industries but only sales where ultimately the gas will be resold. [Emphasis supplied.] *[Id.* 483 F.2d at 626.]

■ It is clear from these authorities that the FPC had no authority, and has no authority now, to set the rates for plaintiff's Disciplinary Barracks sales because they were *direct sales* to the Army and were not sales for resale. Therefore, this court is free to deal with plaintiff's claim with reference to them without in any way interfering with any authority or jurisdiction of the FPC. The FPC held in its opinion No. 489 in this case:

We affirm the examiner's conclusion that the Disciplinary Barracks sale is nonjurisdictional.

* * * * * *

* * * [I]t is clear that whatever the status of the Fort Leavenworth sale, the Disciplinary Barracks sale is a *direct sale.* [Emphasis supplied.]

In its decision, the FPC cited with approval the case of City of Hastings, Nebraska v. Federal Power Commission, 95 U.S.App.D.C. 158, 221 F.2d 31 (1954), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1252 (1955). In that case, direct sale gas had been commingled in an interstate pipeline with gas for resale. The court held that the FPC had no jurisdiction over the rates for the direct sale since that transaction and the sale

for resale were two separate identifiable transactions even though the gas had been commingled in a common interstate pipeline. That case is on "all fours" with the Disciplinary Barracks sales in the instant case.

The Fort Leavenworth sales were slightly different, because the Army resold 6.7 percent of that gas. The resold gas had been commingled in an interstate pipeline not only with the Fort Leavenworth sales gas that was directly used by the Army, but also with the Disciplinary sales gas that was consumed directly by the Army. The defendant contends that by reason of this commingling, *all* of the gas was jurisdictional gas and only the FPC could set the rates the Army had to pay for it. We have already shown that this argument is invalid as to the Disciplinary Barracks direct sales. We will now consider whether this contention has any validity with reference to the Fort Leavenworth sales where a part of the gas was resold by the Army.

This identical question was decided against the defendant by the FPC, not only in the instant case in its opinion No. 489, but also in another case styled The Secretary of the Army and Atlantic Seaboard Corp., 39 FPC 346 (1968), involving the defendant and another natural gas pipeline company. In that case, the Army asked the FPC under section 7(a) of the Natural Gas Act to issue an order directing the pipeline company to sell and deliver gas to the Army at its jurisdictional rates at its Vint Hills Farm Station in Virginia where most of the gas would be used by the Army and a small portion would be resold. The FPC refused defendant's request, holding that its authority under section 7(a) to direct a pipeline company to deliver gas at jurisdictional rates is limited to gas acquired for resale, saying:

Were we to direct Atlantic Seaboard to make available to the Army any more gas than that which is resold, we would quite plainly be directing any interstate pipeline to make a direct industrial sale at a regulated rate. We

need not belabor the fact that we have no authority so to act. Clearly, Congress intended to distinguish between resales and direct consumptive sales * * *. [39 FPC at 351.]

To hold that the Army, which has within its power to separate these transactions, can by its refusal to do so, transform a direct sale into a sale for resale, would be unconscionable as a matter of equity and would be in direct contravention of the Natural Gas Act's prohibition of Commission jurisdiction over direct sales. [*Id.* at 354.]

The Court of Appeals reversed the decision on other grounds. Secretary of Army v. Federal Power Commission, 138 U.S.App.D.C. 65, 425 F.2d 496 (1969). On remand, after further proceedings, the FPC in effect reaffirmed its earlier decision. The Secretary of the Army and Atlantic Seaboard Corp., 46 FPC 565 (1970). In a further appeal, the Court of Appeals affirmed by a *per curiam* order. The Secretary of the Army v. Federal Power Commission, CADC No. 71–2036 (Jan. 15, 1973).

It should be emphasized that in its opinion No. 489, the FPC decided the issues in this case against the defendant. For instance, it held:

Except for the volumes of gas in fact resold by Army * * * sales to Army at issue in this proceeding are not "sales for resale" within the meaning of Section 1(b), and are not subject to the Commission's jurisdiction.

In that opinion, the FPC took the position, as shown above, that it had no jurisdiction to set rates over any of the gas involved here except the 6.7 percent resold by the Army. But it pointed out that even this 6.7 percent of resold gas was not required to be sold by plaintiff at plaintiff's jurisdictional rates until and unless the FPC had authorized it to be sold for resale. This authorization could be obtained in two ways, namely, (1) upon an application by the plaintiff for a certificate to sell the Army under its jurisdictional tariffs whatever portions of the gas may be resold by the

Army, or (2) upon a request by the Army under section 7(a) of the Natural Gas Act for an order from the FPC directing the plaintiff to sell gas to it under its appropriate resale tariff to the extent it is in fact reselling it. In this regard, the FPC stated:

* * * As a matter of law, no sale for resale may take place, regardless of contractual provisions therefor, in the absence of Commission authorization. * * *

* * * * * *

For if Cities is unwilling to apply for a certificate to sell the Army under its jurisdictional tariffs whatever portions of the gas may be resold by the Army, the Army has the authority in view of its long and unchallenged right to receive service for the sale herein, under Section 7(a) of the Natural Gas Act to seek an order from the Commission directing Cities to sell gas to it under its appropriate resale tariff to the extent it is in fact reselling it. It is clear as the record before us that Army does separately identify, by separate billing based upon measurement or estimates, the customers or classes of customers to whom it resells gas. * * *

The FPC pointed out that since it had not authorized the sale of any of the gas for resale, *all* of the gas must be treated as a sale for the Army's own use. In other words, *all* of the gas sold by plaintiff to the Army must be considered and treated as *direct sales* not subject to the jurisdiction of the FPC and not subject to the jurisdictional tariffs of the plaintiff. In so holding, the FPC stated:

* * * Since it seems clear, in the light of the facts discussed above, that prior to the initiation of the Army's complaint herein, the Commission had not consciously authorized any sale for resale, the entire sales by Cities to the Army up to the time appropriate relief procedures, if necessary, are prescribed, must be treated as a sale for the Army's own use.

However, the FPC pointed out that the Army had a remedy as far as the sales for resale of the gas was concerned, *but only for such gas that was resold and not for all of the gas*. This is shown by its holding quoted above that:

* * * [T]he entire sale by Cities to the Army *up to the time appropriate relief procedures*, if necessary, *are prescribed*, must be treated as a sale for the Army's own use. [Emphasis supplied.]

* * * * * *

For if Cities is unwilling to apply for a certificate to sell the Army under its jurisdictional tariffs whatever portions of the gas may be resold by the Army, the Army has the authority in view of its long and unchallenged right to receive service for the sales herein, under Section 7(a) of the Natural Gas Act to seek an order from the Commission directing Cities to sell gas to it under its appropriate resale tariff to the extent it is in fact reselling it. It is clear as the record before us that Army does separately identify, by separate billings based upon measurements or estimates, the customers or classes of customers to whom it resells gas. * * *

Finally, in this regard, the FPC said in its opinion:

In short, we believe that, while the Army is not in a position here to require Cities to provide all of the gas it uses at Fort Leavenworth under Cities' resale tariffs, merely because a small percentage thereof is sold for resale, the Army does have the means to require Cities to sell it the portion of gas the Army resells within Fort Leavenworth at Cities applicable resale tariff. However, we shall not attempt herein to enter any definitive order implementing these views. Instead, we shall give the parties a reasonable time to conduct negotiations consistent with views expressed herein looking towards a mutually satisfactory resolution of their conflicting in-

terests. In the event such negotiations are not fruitful the Army will, of course, be authorized to file such applications pursuant to Section 7(a) of the Act as it may then deem appropriate.

The defendant has misinterpreted that part of the decision of the FPC that states:

> * * * In the event such negotiations are not fruitful the Army will, of course, be authorized to file such applications pursuant to Section 7(a) of the Act as it may then deem appropriate.

The defendant says this part of the opinion makes the decision interlocutory and gives it the right to seek an order under Section 7(a) of the Act making *all* of the gas jurisdictional and subject to plaintiff's jurisdictional tariffs. The defendant is clearly in error on both points. It quotes the above part of the FPC decision out of context. The FPC was merely stating that the defendant could institute a section 7(a) proceeding with respect to the gas that was resold by the Army and not with respect to *all* of the gas.

■ The defendant is also in error in contending that the decision of the FPC was interlocutory in character. The decision was clearly a final declaratory opinion as shown by the pleadings, the finality of the language of the decision, as well as the fact that the defendant filed a motion for rehearing which was denied by the FPC. The FPC stated in its opinion:

> In view of the *declaratory opinion* rendered above, we shall terminate this proceeding, for no further immediate relief has been requested by the parties. [Emphasis supplied.]

When the Army filed its motion for rehearing, it referred to opinion No. 489 as "the *final* decision herein." [Emphasis supplied.] Furthermore, Section 1.-34 of the Rules of Practice of the FPC provides that an application for rehearing may be filed within 30 days after the issuance of any *final decision* or order of the Commission. Section 1.30(e) provides that no rehearing will be entertained until a decision becomes final. In accordance with these rules, the FPC has allowed applications for rehearings to be filed only with respect to final orders and has refused to consider applications for rehearing with respect to interlocutory or non-final orders. Instead, it has considered applications of the latter type as applications for reconsideration. *See* Southern Natural Gas Co., 43 FPC 241 (1970); Hunt Oil Co., 28 FPC 966 (1962); El Paso Natural Gas Co., 36 FPC 777 (1966); United Gas Pipeline Co., 46 FPC 243 (1971). As pointed out above, the defendant filed a motion for rehearing of the FPC's opinion No. 489 and it was accepted, filed and denied as such by the FPC. The defendant did not appeal and the decision became final and binding on the defendant. The decision was a final one and not interlocutory as defendant contends.

The plaintiff urges that since the issues in the instant case have been fully litigated by the parties before the FPC, the defendant should be collaterally estopped from relitigating the same issues in this court. It cites the decision of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) in support of this proposition. While this argument is appealing and persuasive, we do not need to base our decision on this theory in view of the conclusions we have reached on the other issues in this case.

■ Finally, the defendant says that in any event it has paid just and reasonable rates to the plaintiff for the gas it has received, because it has paid the jurisdictional tariff rates of the plaintiff on file with the FPC, and that such rates would not be on file and approved by the FPC if they were not just and reasonable. This does not necessarily follow. While we express no opinion as to the reasonable value of the gas sold by plaintiff to the Army, we point out that the determination by the FPC of just and reasonable rates for jurisdictional sales by natural

gas pipeline companies is based on costs to the companies and other items so as to allow them a reasonable rate of return on their investments. *See* Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); Colorado Interstate Gas Co. v. Federal Power Commission, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945); City of Chicago, Illinois v. Federal Power Commission, 147 U.S. App.D.C. 312, 458 F.2d 731 (1971), cert. denied, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972).

On the other hand, value determined on a *quantum meruit* basis under an implied in fact contract is not based on costs nor a reasonable return on investment of the seller, but on the reasonable value in the marketplace of the property sold. *See* United States v. North American Trans. & Trading Co., 253 U.S. 330, 335, 40 S.Ct. 518, 64 L.Ed. 935 (1920); Campbell v. Tennessee Valley Authority, 421 F.2d 293, 295–296 (5th Cir. 1969), and Buffalo & Fort Erie Public Bridge Authority v. United States, 65 F.Supp. 476, 483, 106 Ct.Cl. 731 (1946); National Savings & Trust Co. v. Kahn, 112 U.S. App.D.C. 155, 300 F.2d 910 (1962); Costigan, Implied In Fact Contracts and Mutual Assent, 33 Harv.L.Rev. 376 (1920); 3 Corbin, Contracts, Sec. 566 (1960).

The question of damages is not before us in this case. We are called upon to determine only the question of liability of defendant to the plaintiff.

When this case was submitted on briefs and oral argument, the court was led to believe by the defendant that if we would enter the suspension order described above, the Army would file a section 7(a) proceeding with the FPC asking for jurisdictional rates on all gas involved in this lawsuit, which, of course, included all direct sales and all sales for resale heretofore made by the plaintiff to the Army at Fort Leavenworth. The suspension order was entered by the court in reliance upon these representations. The Army did thereafter file section 7(a) proceedings with the FPC, but its application does not cover any of the gas involved in this case. Under opinion No. 489, the section 7(a) application only applies to the sale of gas *in the future*. These section 7(a) proceedings can have no effect whatever on the gas heretofore sold by the plaintiff to the Army at Fort Leavenworth, all of which has been held by the FPC in its opinion 489 to be direct sales to the Army over which it has no jurisdiction as to rates. Therefore, we conclude that our suspension order should be withdrawn and canceled.

In summary, we hold that all of the gas heretofore sold by the plaintiff at Fort Leavenworth must be treated as direct sales for the use of the Army, in accordance with FPC opinion No. 489; that such sales are not jurisdictional sales and are not subject to FPC jurisdiction as to rates, and are not governed by the jurisdictional tariffs of the plaintiff on file with the FPC. Furthermore, we conclude that plaintiff is entitled to recover on an implied contract in fact the value of all of such gas on a *quantum meruit* basis.

Accordingly, plaintiff's Motion for Rehearing on our Suspension Order is granted, the Suspension Order is withdrawn and canceled and the case is before the court for decision on the merits; defendant's Motion to Dismiss and defendant's Motion for Remand are denied; and plaintiff's Motion for Partial Summary Judgment on Liability is granted, and the case is remanded to the trial judge to determine the amount of plaintiff's recovery on a *quantum meruit* basis under Rule 131(c).