**Clifford L. ALEXANDER, Secretary of the Army, Petitioner,**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent, Cities Service Gas Company, Intervenor.**

No. 78–1466.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1979.

Decided Nov. 8, 1979.

**544**

Katherine Gruenheck, Atty., Dept. of Justice, Washington, D.C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Ronald R. Glancz and Freddi Lipstein, Attys., Dept. of Justice, and Peter Q. Nyce, Atty., Dept. of Army, Washington, D.C., were on the brief, for petitioner.

George H. Williams, Jr., Atty., Federal Energy Regulatory Commission, Washington, D.C., with whom Howard E. Shapiro, Sol. and McNeil Watkins, II, Atty., Federal Energy Regulatory Commission, Washington, D.C., were on the brief, for respondent.

Melvin Richter, Washington, D.C., with whom Daniel R. Hopkins, Asst. Gen. Counsel, Cities Service Gas Co., Oklahoma City, Okl., was on the brief, for intervenor.

Before MacKINNON and WILKEY, Circuit Judges, and GORDON, Senior District Judge.

Opinion for the Court filed by Senior District Judge JAMES F. GORDON.

Concurring opinion filed by Circuit Judge WILKEY.

JAMES F. GORDON, District Judge:[1]

This case involves a ruling by the respondent, the Federal Energy Regulatory Commission (hereinafter FERC), that the sale of natural gas from the intervenor, the Cities Service Gas Co., to the Army with a portion of that gas then being conveyed to Defense Family Housing (hereinafter DFH) is not a "sale in interstate commerce of natural gas for resale for ultimate public consumption" within the meaning of the Natural Gas Act, 15 U.S.C.A. § 717 *et seq.* (1976 & Supp. 1979), and therefore not within the rate jurisdiction of the FERC. DFH houses army personnel on the Ft. Leavenworth Army base. The petitioner, the Secretary of the Army, has appealed this decision to this Court which has jurisdiction pursuant to 15 U.S.C.A. § 717r(b) (1976). Cities Service has been a party to this action since its intervention at the time of the Secretary's application for rate jurisdiction in March of 1974.

There are three issues which have been presented by the counsel for the petitioner:

---

1. James F. Gordon, Senior United States District Judge, Western District of Kentucky, sitting by designation pursuant to 28 U.S.C.A. § 294(d) (1968).

(1) Whether this transaction is a "sale for resale" for purposes of 15 U.S.C.A. § 717(b) (1976); (2) Whether the gas sold by Cities Service to the Army is subject to the FERC's rate jurisdiction under the comingling doctrine, and; (3) Whether the FERC decision resulted in discrimination against the Army. At the oral argument, counsel for petitioner conceded that their entire case would fall or stand by the resolution of the first issue.[2] For the following reasons, the decision of the FERC is affirmed.

## I.

Since 1963, the Army has been trying to bring the natural gas sold to it by Cities Service for its Fort Leavenworth facilities within the rate jurisdiction of the FERC (formerly the Federal Power Commission, hereinafter FPC). In September of that year during a general rate proceeding for Cities Service, the Army filed a petition with the FPC claiming that all the natural gas sold to it by Cities were "sales for resale" and subject to the FPC's rate jurisdiction. On February 24, 1964, the FPC severed this issue from the general rate proceeding and instituted a separate proceeding to determine this issue.

In 1966, the FPC issued Opinion No. 489, 35 FPC 571 (1966) (TR. 160–65). The FPC found that of all the gas sold to the Army, only 6.7% of it was actually "resold" for jurisdictional purposes, this amount going to small commercial users at Ft. Leavenworth. However, the FPC could find no basis for concluding that it should extend the jurisdictional rate for this small amount to the rest of the gas sold to the Army. The FPC generally characterized this sale

as a sale to the Army for its direct use. It based this decision on the fact that the Army had not previously sought authorization from the FPC for jurisdictional rates, as well as previous case law,[3] and the long history of Cities Service selling this gas to the Army with both parties considering this to be a nonjurisdictional direct sale. The FPC, however, did not attempt to enter a definitive ruling on this matter, and left the parties to negotiate an agreement over its findings. The FPC also stated that should these negotiations not be fruitful, the Army would be authorized to file an application pursuant to Section 7(a) of the Act for a ruling to require Cities Service to provide all or part of the gas at jurisdictional rates.

The parties did attempt negotiations, but, alas, impasse. After giving the required notice, Cities Service terminated its contract with the Army in March, 1971, but it has continued since to supply the Ft. Leavenworth facility with natural gas. The parties could not agree as to the proper compensation to be paid Cities Service for the gas sold, the Army allegedly paying only jurisdictional rates. In 1973, Cities Service filed suit in the United States Court of Claims against the United States on an alleged implied-in-fact contract to recover on a quantum meruit basis compensation for the sale of gas to the Ft. Leavenworth facilities. *Cities Service Gas Co. v. United States,* 205 Ct.Cl. 16, 500 F.2d 448 (1974). Pursuant to a court order entered in that case on March 1, 1974, the Army filed an application under § 7(a) of the Act for a determination on whether the gas sold by Cities Service was within the jurisdiction of the FPC.[4]

---

**2.** The counsel for the Secretary has agreed that in order for the comingling doctrine to apply, the volume of gas transferred from the Army to DFH would have to be considered as a "resale for ultimate public consumption" under § 717(b). The Army concedes that the small amount of gas sold by the Army to the small commercial users on Fort Leavenworth which is an admitted jurisdictional resale is not enough in itself to make the comingling doctrine applicable to this case.

**3.** The cases relied upon by the Commission were: *United States v. Public Util. Comm.,* 345

U.S. 295, 316–18, 73 S.Ct. 706, 97 L.Ed. 1020 (1952); *Hastings v. F.P.C.,* 95 U.S.App.D.C. 158, 221 F.2d 31 (D.C.Cir. 1954), *cert. denied,* 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1252 (1955); *California Elec. Power Co. v. F.P.C.,* 199 F.2d 206 (9th Cir.), *cert. denied,* 345 U.S. 934, 73 S.Ct. 794, 97 L.Ed. 1362 (1952).

**4.** The Court of Claims ultimately resolved that there was an implied contract between the parties, and that Cities Service could collect on its quantum meruit theory. The Court in making this decision concluded that

A hearing before an administrative law judge (hereinafter ALJ) was held on January 20, 1975, to determine the merits of the Army's application. On June 10, 1977, the ALJ issued a decision denying the Army's application. The ALJ found that of the total volume of gas sold, only 4.34% of the gas was actually a sale in interstate commerce for resale under § 717(b).[5] Of the remainder, 52.13% was a direct nonjurisdictional sale to the Army, this not being in dispute among the parties. What was in dispute was the remaining 43.53% which the Army delivered to DFH. The Army contended that this was a resale for purposes under the Act, but the ALJ determined that this was not a resale but merely an "interdepartmental transaction" within the Army for its own use. (TR. 200–17).[6]

The Army appealed the ALJ's decision, and on January 26, 1978, the FERC entered an opinion and order affirming the initial decision (TR. 218–23). An order denying the Army's application for a rehearing was entered on March 28, 1978 (TR. 228–29). As previously mentioned, an appeal was subsequently taken to this Court.

## II.

■ Whether the transfer of gas from the Army to the DFH is a resale for jurisdictional purposes or whether it is merely an interdepartmental transfer within the Army is a question of law and not of fact and so the standard of review found in 15 U.S.C.A. § 717r(b) (1976) is not controlling.[7] The standard of review on a jurisdictional decision of the FERC is whether the deci-

sion was without an adequate basis in law. *Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 678, 74 S.Ct. 794, 98 L.Ed. 1035 (1954); *Louisiana Land & Exploration Co. v. Federal Energy Reg. Comm'n.,* 574 F.2d 204, 206 (5th Cir. 1978). Another consideration for this Court is that great deference should be given to an agency's interpretation of its own regulations. *United States v. National Ass'n. of Sec. Dealers,* 422 U.S. 694, 719, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975); *Chemehuevi Tribe of Indians v. Federal Power Comm'n.,* 420 U.S. 395, 410, 95 S.Ct. 1066, 43 L.Ed.2d 279 (1975); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

■ The Court disagrees with the petitioner's assertion that it should give weight to the opinions of the Comptroller General concerning interagency transfers. Questions on review concerning the authority of the FERC are for the Court to decide and this responsibility should not be abdicated to the Comptroller General. See, *Greene County Planning Bd. v. Federal Power Comm'n.,* 559 F.2d 1227, 1238–39 (2d Cir. 1977). Furthermore, it would be inappropriate to consider these opinions at this level in that they were not raised as an objection in the application for rehearing as is required by 15 U.S.C.A. § 717r(b) (1976). No where in the application is there a specific reference to supposed failure to follow the Comptroller's General's opinion as error to be considered on appeal, and this Court considers that it would be inappropriate to consider this issue at this time. See, *Feder-*

---

all of the gas heretofore sold by the plaintiff at Fort Leavenworth must be treated as direct sales for the use of the Army, in accordance with FPC Opinion No. 489; that such sales are not jurisdictional sales and are not subject to FPC jurisdiction as to rates, and are not governed by the jurisdictional tariffs of the plaintiff on file with the FPC.
*Cities Service Gas Co. v. United States,* 205 Ct.Cl. 16, 500 F.2d 448, 457 (1974). However, the Court of Claims in this case did not have the question before it of whether the sale of gas to DFH by the Army is a resale under the Act for "sale for resale" jurisdictional purposes.

5. The percentage figures are derived from statistics made from the sale and distribution of

the gas to Fort Leavenworth facilities in 1973 (TR. 210).

6. The ALJ also determined that the 4.3% which was found to be within the rate jurisdiction of the Commission did not bring into effect the comingling doctrine so that the entire volume of the natural gas sold could not be considered within the rate jurisdiction of the Commission for this reason (TR. 212–17).

7. 15 U.S.C.A. § 717r(b) (1976) provides that if the factual findings of the FERC are supported by substantial evidence, then such findings are to be conclusive when considered on review.

al Power Comm'n. v. Colorado Interstate Gas Co., 348 U.S. 492, 498, 75 S.Ct. 467, 99 L.Ed. 583 (1955); *Rhode Island Consumer Council v. Federal Power Comm'n.*, 164 U.S. App.D.C. 134, 504 F.2d 203, 212 (D.C.Cir. 1974); see also, *Vanceburg v. Federal Energy Regulatory Comm'n.*, 187 U.S.App.D.C. 196, 571 F.2d 630, 642 (D.C.Cir.1977); *North Carolina v. Federal Power Comm'n.*, 174 U.S.App.D.C. 475, 479, 533 F.2d 702, 706 (D.C.Cir.1976); *Indiana & Mich. Elec. Co. v. Federal Power Comm'n.*, 163 U.S.App.D.C. 334, 502 F.2d 336, 339 (D.C.Cir.1974).

■ In any event we do not consider that the Comptroller General's opinions run *contra* to our conclusion. It is appellant's claim that the Comptroller General's opinions interpreting Section 601 of the Economy Act of 1932, 31 U.S.C.A. § 686 (1976)[8] require courts to conclude that the instant transaction is a "sale for resale for ultimate public consumption" because "interagency reimbursement cost recoveries are to be consistent with government-private contractor reimbursement cost recoveries." Appellant's Br. at 20. However, the relevant statute and opinions are directed to assuring that the bookkeeping adjustment of the respective appropriation accounts reflect the full "actual cost" when goods or services are requisitioned from one agency by an order of another agency under the authority of Section 601. In such instances the statute

and opinions do not operate to establish or alter the basic character of the requisitional order as an interdepartmental transaction between agencies of the United States Government. In fact, the Comptroller General in interpreting the Economy Act in 46 Comp.Gen. 73 (1966) (cited by Appellants) with respect to an interagency requisition of services, only approved the request with the proviso that "the final plans . . . [be] approved by the Bureau of the Budget" and the suggestion that "you obtain the concurrence of the pertinent congressional committees . . . ." *Id.* at 76. This recognition and treatment of the various agency interests that are involved reflects the interdepartmental nature of such transactions and is not supportive of a conclusion that the characteristics of the transaction involved in this intradepartmental arrangement constitute an actual "sale for resale", much less "for ultimate public consumption."

■ This Court also disagrees with the petitioner's assertion that it should give no deference to the FERC's interpretation of the contract between the Army and Cities Service. As this Court stated in *Columbia Gas Transmission Corp. v. Federal Power Comm'n.*, 174 U.S.App.D.C. 204, 530 F.2d 1056 (D.C.Cir.1976):

**8.** 31 U.S.C.A. § 686(a) (1976) provides:

*Purchase or manufacture of stores or materials or performance of services by bureau of department for another bureau or department* (a) Any executive department or independent establishment of the Government, or any bureau or office thereof, if funds are available therefor and if it is determined by the head of such executive department, establishment, bureau, or office to be in the interest of the Government so to do, may place orders with any other such department, establishment, bureau, or office for materials, supplies, equipment, work, or services, of any kind that such requisitioned Federal agency may be in a position to supply or equipped to render, and shall pay promptly by check to such Federal agency as may be requisitioned, upon its written request, either in advance or upon the furnishing or performance thereof, all or part of the estimated or actual cost thereof as determined by such department, establishment, bureau, or office

as may be requisitioned; but proper adjustments on the basis of the actual cost of the materials, supplies, or equipment furnished, or work or services performed, paid for in advance, shall be made as may be agreed upon by the departments, establishments, bureaus, or offices concerned: *Provided,* That the Department of the Army, Navy Department, Treasury Department, Federal Aviation Administration, and the Federal Maritime Commission may place orders, as provided herein, for materials, supplies, equipment, work, or services, of any kind that any requisitioned Federal Agency may be in a position to supply, or to render or to obtain by contract: *Provided further,* That if such work or services can be as conveniently or more cheaply performed by private agencies such work shall be let by competitive bids to such private agencies. Bills rendered, or requests for advance payments made, pursuant to any such order, shall not be subject to audit or certification in advance of payment.

[T]here is room, in review of administrative agencies, for some deference to their views even on matters of law like the meaning of contracts, as on the meaning of statutes, where the understanding of the documents involved is enhanced by technical knowledge of industry conditions and practices.

*Id.* at 1059.

### III.

■ In making its decision, the FERC primarily relied on the *Vint Hill* cases [9] as the basis for denying the Army's 7(a) application. These cases have a fact pattern very similar to the case at bar. The Army was the sole distributor of natural gas at its Vint Hill Farms Station in Virginia, and, as here, was trying to have a large quantity of gas it alleged it resold brought within the rate jurisdiction of the FPC. DFH was a recipient of some of this gas and its method of payment or reimbursement by offsetting departmental bookkeeping entries was similar to the method used in this instance. In the initial decision made by a presiding examiner, it was held that "natural gas furnished by the Army to Defense Family Housing is not a sale for public consumption but (is) in lieu of partial housing allowances." *Vint Hill I,* 39 F.P.C. at 360. On appeal, the FPC affirmed this finding, stating the following:

The so-called "sales" to the Defense Intelligence and to Defense Family Housing are nothing more than intra-Defense Department accounting transactions undertaken for the convenience of the military. In no traditional sense can they be considered "sales," certainly not jurisdictional sales to the public. In all instances where natural gas purchased by the Army is furnished to non-Army Defense facilities the Department of Defense Finance and Accounting office credits the Army's utility services appropriation account. That is the extent of the "sale." And, where the Army supplies natural

gas to military occupants of Army housing it plainly does so in discharge of its obligation freely to supply necessary utility services. See, 10 U.S.C. § 4593 and Army Regulation 420–80(8)(b)(1).

*Id.* at 351. The case was appealed and remanded to the Commission on different grounds. The case was again brought before a presiding examiner who made the following findings in a decision dated January 20, 1971.

Army argues that the gas, lodging, etc., are furnished to Defense personnel in lieu of a cash allowance which military personnel would otherwise be entitled to and that the furnishing of gas therefore constitutes sales. However, Army's obligation is to furnish quarters and fuel to the military men at government expense, not to sell them such services. 10 U.S.C. § 4593. * * * A member of a uniformed service who is assigned to * * a housing facility under the jurisdiction of an uniformed service * * * is not entitled to a basic allowance for quarters * * *."

The Examiner finds and concludes that Army cannot convert its basic obligation to furnish its personnel with quarters and fuel, at Vint Hill Farms, into a sale of such services to the members of the armed forces.

Defense Family Housing serves to support certain activities that fall under the cognizance of other components of the Department of Defense. Defense Family Housing is concerned with the acquisition and construction of living quarters for military personnel and their dependents living on military installations. At Army installations the Post Engineer is usually charged with the responsibility of supervising and operating such systems. Congress obviously felt that it was more efficient and desirable to incorporate into one agency under the sponsorship of the Department of Defense the entire responsibility relating to the providing of quar-

9. *Secretary of the Army v. Atlantic Seaboard Corp.,* 39 F.P.C. 346 (1968), *remanded on other grounds sub nom., Secretary of the Army v. F.P.C.,* 138 U.S.App.D.C. 65, 425 F.2d 496 (1969) (*Vint Hill I*); *Secretary of the Army v. Atlantic Seaboard Corp.,* 46 F.P.C. 565 (1970), *aff'd mem.,* No. 71–2036 (D.C.Cir. Jan. 15, 1973) (*Vint Hill II*).

ters for military personnel and their families.

It is clear from the record in this proceeding that the rates chargeable in transactions between governmental agencies are not necessarily geared to the recoupment of the full cost expended by the government. It is further clear that a motive for profit is non-existent (sic) in these transactions. They are primarily bookkeeping in nature, i. e., geared to make certain that out-of-pocket expenses incurred by one agency on behalf of another are properly credited and accounted for.

The transactions between the agencies of the Department of Defense at Vint Hill cannot be classified as sales. The Army has the responsibility of providing the utility services to Defense Housing; however, aside from the physical aspects of the task these transactions amount to no more than a transfer of funds between appropriations.

The examiner finds no basis for treating interdepartmental transactions, wherein supplies and services are provided by one executive agency to another, as being the equivalent of bona fide sales.

The Commission in its Opinion in *Secretary of the Army v. Atlantic Seaboard Corporation*, 39 FPC 346, and in its order denying the Army's application for rehearing in the latter proceeding, held similarly that intra-departmental transactions between government agencies cannot be considered as being sales to the public. The court in remanding this proceeding back to the Commission did not indicate that there was any error in this categorization as made by the Commission in its aforementioned opinion. There is no evidence in this record that would warrant a change in the above findings. *Vint Hill II*, 46 F.P.C. at 571. This finding was appealed to and adopted by the FPC on August 26, 1971, *Id.* at 565–67, and was subsequently affirmed by this Court in a *per curiam* order without opinion.

We are of the opinion that the *Vint Hill* cases provide adequate *stare decisis* for which the FERC could have based its decision in this case, and that this precedent by itself would constitute the "adequate basis of law" needed for this Court to affirm the FERC's ruling. The Court sees nothing of substantial difference between this case and the *Vint Hill* cases that would persuade us to change or differentiate this case from that one, and so depart from the *ratio decidendi* of the Agency's opinion in *Vint Hill*. The Army claims that the Commission was in error for relying on *Vint Hill* insofar as it ignored Comptroller General precedent and the language of the Economy Act, but this Court has indicated, *supra*, why these arguments are not applicable to this case at this time.

Both FERC and Cities Service allege that the *Vint Hill* cases collaterally estop the Army from litigating the issue of a possible resale to DFH in this case under the reasoning found in *Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *see also, Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). It is not necessary to decide this issue in that the *Vint Hill* cases, at the very least, do provide an adequate basis in law for the FERC to base their opinion and order in this case.

## IV.

The other basis for the FERC's denial of the Army's application was its examination of the transaction between DFH and the Army. The FERC concluded that this interaction was not a sale of gas but an interdepartmental transfer between sister agencies within the Department of Defense. This Court agrees with this characterization.

One indication that this transaction is not a sale is the different forms used by the Army when it contracts to sell utility services to a source within the private sector and when it agrees to sell such services to another government agency. Army Regulation (hereinafter AR) 420–62(2)(b) *requires* that DA Form 2099–R, entitled "Contract for Sale of Utility Services", be used "without deviation for all sales to purchasers other than Government agencies and non-appropriate fund activities." DA Form 2100–R, a form entitled a "Memoran-

dum of Understanding for Sale of Utilities Services", is to be used "without material deviation from all sales to other Government agencies and nonappropriated fund activities." *Id.* The FERC correctly characterized these documents as being "virtually identical in style, language and format" and that "all additional discrepancies between the two documents must be considered as intentional and significant" (TR. 211).

The FERC relied on key differences between these two forms to come to the conclusion that there was not a "sale" of natural gas from the Army to DFH. It stressed the different terminology used in the sections of both forms dealing with "Services Rendered" and "Payment". A private entity purchasing utility services from *the government* must "*pay*" for these services; a government agency "reimburses" *the Army* for the services it receives. This terminology is consistent with the idea that there can be no "sale" from the government to itself, see *Vint Hill II*, 46 F.P.C. at 571, and that this transaction is in reality an interdepartmental transfer of natural gas in furtherance of the Army's duty to furnish this service to military personnel at government expense pursuant to 10 U.S.C.A. § 4593 (1959); AR 420–80(b)(1).[10]

These forms further differ in that the "Contract for Sale" contains six paragraphs not found in the "Memorandum of Understanding".[11] Of these missing paragraphs, the most important by its absence is the

section in the "Contract for Sale" providing for a procedure the parties can use when there is a dispute over a factual issue concerning the contract. The FERC was correct in concluding that the absence of these paragraphs indicates that the "Memorandum of Understanding" is something less than a "Contract for Sale".

The FERC also looked to the difference in the procedures which the Army used in billing the small commercial users on Ft. Leavenworth and how it billed DFH. The record shows that the Army billed the commercial users in the following manner:

> Gas will be measured by ———— (displacement) (orifice) meter(s) to be furnished, installed and maintained by the Purchaser. The meter(s) will be read by the Contracting Officer, or by his authorized representative, and bills will be rendered monthly to the Purchaser by the Government. All such bills will be due and payable 15 days after receipt thereof by Purchaser. (TR. 143).

This is a typical metering and billing procedure for the sale of utility services: the Army sells that gas, checks the purchaser's meter to see the volume consumed, bills the purchaser for its use, and the purchaser then must pay the bill within an allotted time period. Contrast this to the billing and metering procedure used in the transaction between the Army and DFH:

> The usage will be estimated by the Facilities Engineer, with monthly breakout by housing category, compatible with

---

**10.** Another persuasive point in support of this notion of interdepartmental transfer, but which was not discussed in the FERC opinion was the statutory authorization and basis for these forms. The "Contract for Sale" form cites as its basis 10 U.S.C.A. § 2481 (1975) which allows the Secretary of Defense to sell utility services to "purchasers within the immediate vicinity of an activity of" any of the armed services. The statutory basis for the "Memorandum of Understanding" is 31 U.S.C.A. § 686 (1979) which allows purchase or manufacture of stores, materials or performance of services between governmental agencies.

The Court is aware that 31 U.S.C.A. § 686(c) (1976) provides that "[o]rders placed as provided in subsection (a) of this section shall be considered as obligations upon appropriations in the same manner as orders or contracts placed with private contractors." While this

would seem to put a "Memorandum of Understanding" upon the same level as a "Contract for Sale", this matter will not be determined at this time for it was not properly brought up on appeal from the FERC.

**11.** In addition to the paragraph dealing with the dispute procedure, the "Contract for Sale" contains paragraphs which absolve the federal government from liability under the contract, provide the government the right to recapture its utility facilities, prevent congressmen and resident commissioners from benefitting from such contracts, and forbid a purchaser from using an agent or agency to secure such a contract when the agent or agency does so on a commission, percentage, brokerage or contingent fee basis. The "Contract for Sale" also contains a definitions section.

accounting system. Bills will be prepared by Budget Branch of the Facilities Engineer, rendered monthly to Finance and Accounting Office as appropriation reimbursement to the credit of the appropriation or appropriations currently available for the supply of such services (TR. 150).

This is not a typical billing and metering procedure. The amount billed for is arrived at by monthly estimates by the Facilities Engineer, and not through reading of gas meters. The monthly bill is not sent to the DFH who allegedly purchases the gas, but is sent to the Finance and Accounting Office. There is no payment as such by the purchaser; rather, the Finance and Accounting Office credits the account of the DFH and debits the Army's account. This is another factor which indicates that the DFH–Army transaction was an interdepartmental transfer, and not a sale in its commonly used sense.

The Army asks for this Court to primarily consider the *fact* of payment over the *manner* of payment. In doing so this Court would be ignoring the Army's own regulations, forms and manner of dealing. If there is no difference between the sale of gas from the Army to a commercial body and a similar sale to a government agency, why does the Army itself provide for such a differentiation? As with a sale to a commercial body, DFH did purchase gas, and gas was delivered for its use. However, in light of the regulations the different forms, and especially in light of the *Vint Hill* precedent, this Court cannot say that the FERC did not have an adequate basis in law upon which to deny the Army's application for jurisdictional rates for the gas it sold to DFH.

## V.

In summary, this Court finds that the FERC had an adequate basis in law upon which to deny the Army's § 7(a) application. Since the volume of gas sold to DFH does not come within the rate jurisdiction of the FERC, the petitioner's other arguments alleging jurisdiction under the comingling doctrine as well as discrimination against the Army fall by the wayside. Therefore, it is hereby ordered and adjudged that the decision of the FERC is affirmed, and that the petitioner's appeal be denied.

WILKEY, Circuit Judge, concurring:

I concur in Judge Gordon's careful and analytical opinion primarily because the *Vint Hill* cases[1] before the Federal Power Commission and their ultimate affirmance in this court were binding upon the agency on the decisive issue of whether the gas going from the Army to the Defense Family Housing Agency is a "resale for ultimate public consumption" within the meaning of the Natural Gas Act. A subsidiary supporting rationale is that the various Government entities involved have so structured and documented their transactions in a manner which makes it difficult to construe the transfer from the Army to the DFH as a "resale." I add this concurring opinion to point out that the Defense Department and its components are discriminated against in comparison with other large purchasers of gas; to no one's surprise, the ultimate non-beneficiary or ultimate entity losing by these arrangements and construction of the regulations and statute is the long-suffering American taxpayer.

The primary purpose of Natural Gas Act regulation is to protect the consumer. In relation to that objective, it has been recognized that where the purchaser (the Army here) from the pipeline (Cities Service) is one who performs the function of redistribution to other ultimate users, the purchaser from the pipeline is entitled to buy at a lower regulated rate because it is reselling the gas. The Army buys the gas on the basis of negotiation, but negotiation is a partial misnomer, because the Army really has no alternative source of supply to Cities Service. The Army has invested capital in the distribution facilities at Fort Leavenworth just as a municipality, privately owned public utility, or other wholesale pur-

1. *Secretary of the Army v. Atlantic Seaboard Corp.*, 39 F.P.C. 346 (1968), *remanded on other grounds sub nom. Secretary of the Army v. FPC*, 138 U.S.App.D.C. 65, 425 F.2d 496 (1969)

(*Vint Hill I*); *Secretary of the Army v. Atlantic Seaboard Corp.*, 46 F.P.C. 565 (1970), *aff'd mem.*, No. 71–2036 (D.C. Cir. 15 Jan. 1973) (*Vint Hill II*).

chaser would have done for ultimate redistribution.

The difficulty in calling the Army's sale to Defense Family Housing a "resale" for the purposes of the Natural Gas Act comes from the fact that the Army does not either sell directly to individual homeowners nor does it in fact sell to a truly arm's length third party or a group of third parties. The Army "sells" to another Government agency, DFH. The DFH is not controlled by the Army; it, like the Department of the Army, is a part of the Defense Department, and functions for many more people and entities other than the Army. Like all inter-Governmental transactions, the "sale" by the Army to the DFH is accomplished by an entry on the books of the Government Accounting Office.

It is of some significance that the obligation to furnish the gas to the household units at Fort Leavenworth is the obligation of "the United States," not the Army, because it follows from this, as counsel at oral argument for both the FERC and Cities Service were free to admit, that if the DFH were located in another Government department, HUD for example, and were not part of the Defense Department, the position of the parties would be exactly the same. The FERC would contend that "payment" was accomplished by an accounting entry on the books of the Government, and was not a sale or resale within the meaning of the statute.

The statute, § 717, clearly says "resale for ultimate public consumption." The DFH itself does not sell at all; the DFH supplies the individual families in satisfaction of the obligation of the United States to provide heat and fuel for the Government employees' housing. If the DFH and the Government employees it services are considered together, then arguably the DFH could be considered an ultimate public consumer; yet, the DFH itself does not consume a cubic foot of gas, it has the responsibility of supplying it to the households which do.

So here we have an original sale, Cities Service to the Army, a transfer by the Army to the DFH, and use of the gas by the ultimate consumer, the Government employee households. It is this transfer by the Army to DFH which must be classified as a "resale" within the meaning of the statute for the Army to be able to buy at a wholesale rate from Cities Service. The difficulty with the Army's position is that the householder does not pay the DFH for the gas, because this is part of what he is entitled to be furnished by "the United States"; nor does the DFH "pay" the Army for the gas, because the "payment" is accomplished by a transfer of accounts on the Government's books.

What this court is holding, by sustaining the position of the FERC here, is that no Government department such as the Army can be a wholesale purchaser at regulated prices, even though it expends capital and installs a distribution system for those whom it services, if another Government agency appears in the chain of distribution as the "purchaser" from the Army (because no Government agency can be a true purchaser nor can there be a true "resale" within the meaning of the statute), and if those who ultimately consume the gas receive it in satisfaction of an obligation owing them from the United States rather than paying outright for the gas. Our holding, at the FERC's behest, thus knocks out economies of wholesale purchase by *all* federal Government agencies, while municipalities or privately owned public utilities are enabled to buy at wholesale regulated rates, because they are reselling to individual householders, and thus unquestionably come within the language of the statute "resale for ultimate public consumption." The FERC's interpretation of the statute thus protects all consumers except the biggest one, the United States Government, whose bill is, of course, financed by the taxpayer.

I suggest that where a Government agency performs the distribution function of a municipality or large private utility buying gas for resale, the Government agency should enjoy the same economies of purchase. This desired result could be reached simply by treating the sale by the Army to another Government agency (DFH here) as a resale within the meaning of the statute, but this seems to be precluded by the *Vint Hill* cases and the manner in which the

Government has arranged and documents its internal transactions.

I concur because the law is now rigged this way, as Judge Gordon's analysis convincingly shows, but we ought clearly to recognize how the law is rigged against the federal Government entities and their employees in comparison with the advantage of wholesale purchase conferred on municipalities, privately owned utilities, and their ultimate consumer-distributees. The FERC should reconsider its interpretation of the statute, and if the Agency does not, then Congress should consider an amendment to the statute to put government purchases on an equal basis with private.