Ambrosio **CHAVEZ**, et al., **Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

No. 392–87C.

United States Claims Court.

Aug. 31, 1988.

K. Douglas Perrin, Roswell, N.M., for plaintiffs.

Tamra Phipps, Washington, D.C., with whom was Asst. Atty. Gen., John R. Bolton, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action came before the court on defendant's motion to dismiss the complaint of plaintiff Tags Richards pursuant to RUSCC 12(b) for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Defendant maintained that because plaintiff Richards orally contracted with officers of the United States Department of Agriculture who were not authorized to contract under the program involved in this case, that no express contract or contract implied-in-fact existed upon which plaintiff could premise a suit against the government.

## FACTS

Plaintiff, Tags Richards, claimed that the United States refused to pay for services rendered on an irrigation project in Lincoln County, New Mexico. He asserted that defendant, acting through the Soil Conservation Service (SCS) of the United States Department of Agriculture, entered into an oral contract with him in May of 1981 under the Agricultural Conservation Program, 16 U.S.C. § 590a (1982), whereby he was commissioned to repair and replace a portion of the Ambrosio Chavez irrigation pipeline. Plaintiff further asserted that the contract between himself and defendant did not rest solely on the oral assertions of SCS but also on the alleged request of the Agricultural Stabilization and Conservation Service (ASCS), another arm of the Department of Agriculture, that the work be done. Plaintiff also claimed that the repairs were made for the benefit of SCS and ASCS, and that the ASCS agreed to pay for the work completed by plaintiff.

The Complaint recited in relevant part:

4. In approximately March of 1980, the Agricultural Plaintiffs were approached by representatives of the Soil Conservation Service of the United States Department of Agriculture, agents and employees of the Defendant, with a proposal to construct for Agricultural Plaintiffs a new underground pipeline to replace the surface ditches described above which had supplied water for the Agricultural Plaintiffs' crops for a number of years. The said agents and employees of the Defendant promised to pay virtually all of the cost of construction of the line and further promised Plaintiffs that the new pipeline

would save Plaintiffs both money and water and more efficiently irrigate their crops. The Agricultural Plaintiffs agreed to the proposal thereby creating an oral contract.

5. All of the design work for the new underground line was performed by agents and employees of the Defendant.

\* \* \* \* \* \*

20. The Plaintiff Tags Richards was a general contractor on the line construction.

21. The Defendant, acting by and through its agents: representatives of the Soil Conservation Service of the United States Department of Agriculture, entered into an oral contract with Tags Richards to repair and replace a portion of the line in approximately May of 1981. Said work was properly performed by Tags Richards in approximately June and July of 1981.

For this work, which apparently was timely and properly performed, plaintiff claimed a right to payment of $13,833.20.

Plaintiff Richards and Agricultural Plaintiffs[1] originally filed suit in the United States District Court for the District of New Mexico seeking relief under the Federal Torts Claims Act. The district court dismissed Richards' claim *sua sponte* for lack of jurisdiction. *Niccum v. Lyng*, No. 87–0042C, slip op. at 1 (D.N.M. June 18, 1987). Agricultural Plaintiffs and Richards filed suit in this court six months after filing in the district court and while the district court still had the claims of the Agricultural Plaintiffs under consideration. In response to a motion to this court by defendant to dismiss per 28 U.S.C. § 1500 (1982), the claims of the Agricultural Plaintiffs were dismissed with prejudice because they were active participants in a previously filed case in the district court. Because plaintiff Richards' cause of action had been dismissed by the district court and because it sounded more in implied contract than in tort, this court retained jurisdiction over

his claim. *Chavez v. United States*, 14 Cl.Ct. 212, 216 (1988).

Defendant has now filed a motion to dismiss plaintiff Richards' claim under RUSCC 12(b) because neither the SCS nor the ASCS or their officers and employees had authority under the Agricultural Conservation Program governing the Ambrosio–Chavez pipeline project to enter into contracts on behalf of defendant. Defendant maintained that the United States is not bound by the unauthorized acts of its employees and that any party contracting with the government bears the risk of accurately ascertaining whether the individual or agency purporting to act for the government is operating within the bounds of their respective authority. Defendant concluded that plaintiff could not rely upon the apparent authority of defendant's agents and that this court must therefore dismiss plaintiff's claim.

## DISCUSSION

■ As a preliminary matter, plaintiff in his original complaint alleged a contract between himself and the defendant based only upon discussions with agents of the SCS. In his response to defendant's motion to dismiss, plaintiff, for the first time, argued that the work was also done at the request of the ASCS. Defendant objected to plaintiff's presentation of a new issue in its response because defendant had not foreseen and hence not addressed the issue of the involvement of ASCS in its motion to dismiss. Defendant nonetheless did address the ASCS issue in its reply brief. Rule 15(a) of the United States Claims Court requires this court to grant leave to amend pleadings "freely ... when justice so requires." While a motion to so amend would, in all likelihood, have been allowed, plaintiff chose not to amend his complaint, but because defendant addressed the ASCS issue in its reply, and the court finds that defendant was not prejudiced thereby, the court will address the issue.

1. "Agricultural Plaintiffs" were those landowners, farmers and ranchers in the area whose lands benefited from Mr. Richards' work on the pipeline. For a more expansive factual history of this case see *Chavez v. United States*, 14 Cl.Ct. 212 (1988).

The Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), gives this court jurisdiction over any express or implied contract to which the United States is a party.

█ In a recent decision of the United States Court of Appeals for the Federal Circuit, *W.R. Cooper Gen. Contractor v. United States*, 843 F.2d 1362 (Fed.Cir. 1988), the Court enunciated the standard of review of a RUSCC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Plaintiff in *Cooper* asserted that he had provided services on a government work project for which he had not been able to recover payment. After suit was filed in the United States Claims Court, defendant filed a 12(b)(1) motion to dismiss plaintiff's claim for lack of subject matter jurisdiction. Defendant based its motion on the position that no contract existed between the parties and therefore the United States Claims Court lacked jurisdiction over plaintiff's claim. The Claims Court granted defendant's motion. *W.R. Cooper Gen. Contractor v. United States*, 12 Cl.Ct. 406, 408–11 (1987). On appeal the United States Court of Appeals for the Federal Circuit reversed. The Court stated:

> In cases such as this in which a party has moved to dismiss for lack of jurisdiction, we must consider the facts alleged in the complaint to be correct. *Scheuer v. Rhodes*, 416 U.S. 232, 236 [94 S.Ct. 1683, 1686, 40 L.Ed.2d 90] (1974); *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1562 n. 4, 225 USPQ 121, 123 n. 4 (Fed.Cir.), *cert. denied*, 473 U.S. 929 [106 S.Ct. 22, 87 L.Ed.2d 700] (1985). If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied. *Scheuer*, 416 U.S. at 236 [94 S.Ct. at 1686].

*Cooper*, 843 F.2d at 1364. The principle enunciated by the Federal Circuit clearly governs the present action. In order for defendant to prevail on its motion, plaintiff's alleged facts, while accepted as correct, must not raise any possible basis upon which plaintiff might possibly prevail.

Defendant's Rule 12(b)(4) motion to dismiss for failure to state a claim upon which relief can be granted is so interrelated with lack of jurisdiction over the subject matter that the *Cooper* rationale applicable to defendant's Rule 12(b)(1) motion applies equally to Defendant's Rule 12(b)(4) motion. In reviewing defendant's Rule 12(b)(4) motion, the court is not to decide whether plaintiff's alleged claim will ultimately succeed, but whether plaintiff has alleged a set of facts sufficient to support its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* Further, when reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the allegations in the complaint must be construed in the light most favorable to the non-moving party. *Id.* There can be no dismissal unless the party making the motion is able to establish that on the face of the complaint there is an insurmountable bar to relief. *Thomas W. Garland, Inc. v. St. Louis*, 596 F.2d 784, 787 (8th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). Accordingly, the court may only grant defendant's RUSCC 12(b)(4) motion to dismiss for failure to state a claim upon which relief may be granted if defendant establishes that plaintiff, under no circumstances, can prove any set of facts that would entitle plaintiff to relief, while construing the allegations in the light most favorable to plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Bryant v. California Brewers Ass'n*, 585 F.2d 421, 425 (9th Cir.1978), *vacated*, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980); *Builders Corp. v. United States*, 259 F.2d 766 (9th Cir.1958).

█ While the Tucker Act vests jurisdiction in this court over "any express or implied contract," 28 U.S.C. § 1491(a)(1) (1982), it does not reach claims based on contracts implied in law; only those implied-in-fact. *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983); *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279,

69 L.Ed. 643 (1925); *Porter v. United States,* 204 Ct.Cl. 355, 365 n. 5, 496 F.2d 583, 590 n. 5 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975). A contract implied-in-law is one in which no agreement between the parties occurred but where a duty is imposed by the law to prevent injustice. *Algonac Mfg. v. United States,* 192 Ct.Cl. 649, 674, 428 F.2d 1241, 1255–56 (1970); *Hirschmann v. United States,* 11 Cl.Ct. 338 (1986). An implied-in-fact contract requires the same contractual elements as are required to establish an express contract, *i.e.,* mutuality of intent, offer and acceptance, consideration, and lack of ambiguity. *Juda v. United States,* 6 Cl.Ct. 441, 452 (1984). The circumstances of a contract implied-in-fact must indicate that the parties have in fact taken upon themselves corresponding obligations and liabilities, and have come to a "meeting of the minds." *Porter,* 204 Ct.Cl. at 365, 496 F.2d at 590; *Brannan v. United States,* 7 Cl.Ct. 399, 404 (1985); *Gratkowski v. United States,* 6 Cl.Ct. 458, 461–62 (1984). A contract with the United States can only exist if it is entered into with an agent of the government with the direct authority to obligate funds of the United States. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 3, 92 L.Ed. 10 (1947); *Pacific Gas and Elec. Co. v. United States,* 3 Cl.Ct. 329, 338–39 1983), *aff'd,* 738 F.2d 452 (Fed.Cir.1984).[2]

In this case, the authority given to the SCS is outlined in 7 C.F.R. §§ 601.1 to .5 and 7 C.F.R. § 700.5(d). The provisions state in relevant part:

> [T]he following functions [are assigned] to the Soil Conservation Service:
>
> \* \* \* \* \* \*
>
> (c) Administer the basic program of soil and water conservation under Pub.L. 46, 74th Congress, as amended, and related laws (16 U.S.C. 590 a–f, i–*l*, q, q–1; 42 U.S.C. 3271–3274; 7 U.S.C. 2201), including:

> (1) Technical assistance to land users in carrying out locally adopted soil and water conservation programs primarily through the conservation districts in the 50 States, Puerto Rico, and Virgin Islands, but also to communities, watershed groups, Federal and State agencies and other cooperators including such assistance as:
>
> \* \* \* \* \* \*
>
> (v) Assistance to other Department agencies in connection with the administration of their program, as follows:
>
> (A) Agricultural Stabilization and Conservation Service in the development and technical servicing of certain programs, such as the rural environmental assistance program, water bank program, Appalachian regional development program and other such similar conservation programs.

7 C.F.R. § 601.1(c)(1)(v)(A) (1981). Furthermore:

> (d) *The Soil Conservation Service (SCS) shall:*
>
> \* \* \* \* \* \*
>
> (2) Coordinate technical assistance and recommend [an] appropriate agency or group to provide technical assistance on a project by project basis.

7 C.F.R. § 700.5(d)(2) (1981).[3]

Under this grant of authority, SCS had authority to give only technical assistance to ASCS to accomplish the projects constructed under the Agricultural Conservation Program. The SCS had no authority to contract for services under that program. The ASCS, on the other hand, had limited authority to grant monetary assistance, including cost sharing, however, according to 7 C.F.R. Part 701 (1981), this monetary assistance was initially to be granted or given to farmers and ranchers who then would assume responsibility for contracting with private contractors for the

---

**2.** This Black Letter law has been most recently reiterated in its entirety in *Jack Pollack and Menomonee Enters. v. United States,* 15 Cl.Ct. 46 (1988).

**3.** A program included, though not mentioned by name, is the Agricultural Conservation Program here at issue. *See* 16 U.S.C. § 590a (1982).

various work projects.[4]

Plaintiff pled that defendant should be found liable under its "oral" contract because the work done on the pipeline project was done for the benefit of both the SCS and the ASCS. Defendant countered with an echoing response, *i.e.*, a party contracting with the government must bear the burden of ascertaining whether the agent purporting to contract for the government is acting within the bounds of authority, citing a long line of case law in support thereof. *Heckler v. Community Health Servs.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984); *Federal Crop Ins.*, 332 U.S. at 384, 68 S.Ct. at 3; *Thanet Corp. v. United States*, 219 Ct.Cl. 75, 85, 591 F.2d 629, 635 (1979); *Hazeltine Corp. v. United States*, 10 Cl.Ct. 417, 440 (1986), *aff'd*, 820 F.2d 1190 (Fed.Cir.1987).

■ Statements from a declaration of the Executive Director of the New Mexico State ASCS buttressed defendant's analysis of the relevant law. The Executive Director stated:

> [n]o employee, agent or representative of ASCS has nor to my knowledge had in May 1981, the authority to enter into an oral contract with Tags Richards to repair and replace a portion of the Ambrosio–Chavez pipeline, nor did any employee, agent or representative have authority to promise Tags Richards that ASCS would pay for repair or replacement work on the line.

> Under the regulations of 7 C.F.R. Part 701, which govern the program under which the Ambrosio–Chavez pipeline was constructed and was to be maintained, the landowners whose property was to be benefited by the pipeline, as Agricultural Conservation Program (ACP) participants, are themselves responsible to contract for construction, ASCS may pay the landowners a portion of the expenses of these activities, upon application by the landowners for cost-sharing, but ASCS does not have the authority to

contract directly with a contractor for these activities.

Defendant's Reply To Plaintiff's Answer Memorandum Brief, App. 1. Accordingly, if neither the SCS nor the ASCS, which administered the ACP, possessed authority to contract for services such as furnished by plaintiff, it follows that no officer or employee of those agencies possessed the requisite authority to contractually bind the United States to plaintiff, even inadvertently. *Pacific Gas and Elec.*, 3 Cl.Ct. at 339; *New Am. Shipbuilders, Inc. v. United States*, 15 Cl.Ct. 141 (1988). If the SCS and the county level ASCS lacked authority to contract directly with plaintiff, it would clearly appear that no express contract or contract implied-in-fact could have arisen between plaintiff and the government, even if plaintiff's allegations were accepted as true. *Robert F. Simmons & Assocs. v. United States*, 175 Ct.Cl. 510, 360 F.2d 962 (1966); *see generally Hardin County v. Trunkline Gas Co.*, 311 F.2d 882 (5th Cir.1963).

The court, however, finds that the existence or level of federal authority involved in the purported contract in dispute has not been established totally and needs further clarification. In considering defendant's motion to dismiss, the court reviewed *United States v. Amdahl*, 786 F.2d 387 (Fed. Cir.1986), wherein the Federal Circuit allowed recovery under a contract implied-in-fact because the disallowance of recovery would have violated the court's "good conscience to impose upon the contractor *all* economic loss from having entered [into] an illegal contract." *Id.* at 393 (emphasis in original). The Amdahl Corporation protested the purchase of a computer mainframe by the Treasury Department from Federal Home Loan Mortgage Corporation on the grounds that it was contrary to the delegation of procurement authority from the General Services Administration. In ruling on the case, the Federal Circuit first stated

---

**4.** It is unclear from the pleadings whether plaintiff based his claim on the request of the county level ASCS or the state level ASCS or whether that particular issue is even in question. Plaintiff, however, supported his assertion with minutes from a county ASCS meeting. The court, therefore, infers for the purposes of this Order that plaintiff's claim is based on assertions made by the county level ASCS.

the Black Letter law, "that the failure of a contracting officer to comply with statutory requirements in making an award renders the contract a nullity, ... [t]he courts are bound to strike down illegal contracts [and] ... [t]hus, no damages can be awarded for 'breach' of a nullity." *Id.* at 392–3 (citations omitted). Then, the court, in an exercise of apparently equitable authority, stated:

> Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* [contract implied-in-fact] or *quantum meruit* [contract implied-in-law] basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity.

*Id.* at 393. The court held that the contractor was not to be compensated under the existing contract, but rather under an implied-in-fact contract. The *Amdahl* decision cited *Prestex, Inc. v. United States*, 162 Ct.Cl. 620, 628, 320 F.2d 367, 373 (1963), emphasizing that:

> even though a contract be unenforceable against the Government, because not properly advertised, not authorized, or for some other reason, it is only fair and just that the Government pay for goods delivered or services rendered and accepted under it. In certain limited fact situations, therefore, the courts will grant relief of a quasi-contractual nature when the Government elects to rescind an invalid contract. No one would deny that ordinary principles of equity and justice preclude the United States from retaining the services, materials, and benefits and at the same time refusing to pay for them on the ground that the contracting officer's promise was unauthorized, or unenforceable for some other reason. However, the basic fact of legal significance charging the Government with liability in these situations is its retention of benefits in the form of goods or services. *See also Urban Data Systems, Inc. v. United States*, 699 F.2d [1147] at 1154 [ (Fed.Cir.1983) ]; *Cities*

*Service Gas Co. v. United States*, [205 Ct.Cl. 16] 500 F.2d 448 (Ct.Cl.1974).

*Amdahl*, 786 F.2d at 393. This court, however, can find no substantive difference between allowing payment under an admittedly illegal contract and denying the very existence of that same contract.

This concept of "fairness or equity" embraced by the Federal Circuit seems to be inapposite to the long-established principle that contracts must be awarded in accordance with the law and regulations, and that only an agent expressly authorized to bind the United States contractually may do so. Nonetheless, it appears as if the "equitable" exception to the law as expressed in *Amdahl* and a handful of predecessor decisions would have this court grant relief to plaintiff under both contracts implied-in-law and contracts implied-in-fact because the government received and kept a benefit from plaintiff's labor, and would be, without more, liable under the "ordinary principles of equity" for the fair value of the benefit. *Prestex*, 162 Ct.Cl. at 628, 320 F.2d at 373.

■ This court clearly has no jurisdiction, equitable or otherwise, over contracts implied-in-law. *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983); *Hirschmann v. United States*, 11 Cl.Ct. 338, 341–42 (1986). Nor does the court have the power to grant specific equitable relief in cases such as this. *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 630, 34 L.Ed.2d 647 (1973); *see Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The relief that the court can give is expressly "limited to actual, presently due money damages from the United States." *Glidden Co. v. Zdanok*, 370 U.S. 530, 557, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 671 (1962). Equitable doctrines can be employed incidentally to this court's general monetary jurisdiction to arrive at a money judgment or substantive principles on which to base the award of a money judgment. *Pauley Petroleum v. United States*, 219 Ct.Cl. 24, 38, 591 F.2d 1308, 1315 (1979); *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 137–38, 453 F.2d 1272 (1972); *see e.g.,*

*United States v. Milliken Imprinting Co.,* 202 U.S. 168, 26 S.Ct. 572, 50 L.Ed. 980 (1906). *Amdahl,* however, seems to direct this court to award relief even though the person or persons authorizing the alleged oral contract had no actual contracting authority and regardless of whether the elements of an express contract were extant, which does not appear to be the case. *See New Am. Shipbuilders,* 15 Cl.Ct. 141 (1988) (the requirements of a contract implied-in-fact are identical to those of an express contract).

The court has considered the complaint under the standards of *W.R. Cooper Gen. Contractor v. United States,* 843 F.2d 1362 (Fed.Cir.1988), *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and concluded that there is a "possible basis on which the non-movant might prevail." *Cooper,* 843 F.2d at 1364. The substantive law under which plaintiff brought this action, 16 U.S.C. § 590h (1982), is far from clear and the implementing regulations contained in Title Seven of the Code of Federal Regulations do little to clarify the law; at least without more facts and information. It appears to the court that the county ASCS committees have a close working relationship with the State ASCS and the Department of Agriculture and that a federal officer or employee either was, or could have been, present at the meeting which allegedly gave rise to the oral contract. It may well be that no person in attendance at that meeting had contracting authority as claimed by defendant in its reply brief, but under the equitable powers applied by the Federal Circuit in *United States v. Amdahl,* 786 F.2d 387 (Fed.Cir.1986), plaintiff might have performed his services under a contract implied-in-fact. A key to opening that inquiry would be whether the work performed by plaintiff was part of a federal project and if the government benefitted from plaintiff's services, whether or not there·was any intent to do so by SCS or ASCS. These issues, as well as others, require the court to find, considering plaintiff's allegations to be true and most favorable to him, the possibility, albeit slim, that plaintiff might

be able to prove facts entitling him to the relief sought.

## CONCLUSION

Defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to RUSCC 12(b)(1) and (4) is denied. If plaintiff elects to continue with its litigation against the United States, it shall move to file an amended complaint within thirty days of this Order to include its claim based upon actions by the ASCS.

IT IS SO ORDERED.

