**Richard E. HEIM, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 224–88C.

United States Claims Court.

Jan. 25, 1991.

Michael D. Lebedeker, West Palm Beach, Fla., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Captain Lan Throssell, Dept. of the Army, of counsel.

## OPINION

HODGES, Judge.

Richard E. Heim was transferred from a United States Army Reserve (USAR) unit to a USAR Control Group after his Officer Evaluation Reports became generally unfavorable. He did not participate in USAR recognized activities after his transfer to the control group, so Mr. Heim earned no additional retirement points or pay before his discharge on November 28, 1987.

Mr. Heim sued for pay he would have received in his reserve unit had he not been transferred, correction of his military records, and reappointment to his former grade. The United States filed motions to dismiss Mr. Heim's complaint for failure to state a claim on which relief can be granted and for summary judgment.

Plaintiff's complaint fails to state a claim on which relief can be granted.

### Factual Background

Richard E. Heim was appointed 2d Lieutenant, Quartermaster Corps, U.S. Army Reserve, on June 2, 1972. He was promoted to 1st Lieutenant on June 6, 1975, and reassigned to the 3220th U.S. Army Garrison November 1, 1975. He was promoted to Captain on June 5, 1979. During the time that he served in the 3220th Army Garrison, he attended weekend drill sessions and two weeks of annual active duty for training, receiving both pay and retirement points for such service. Until December 1979, Mr. Heim's Officer Evaluation Reports generally were favorable.

Evaluation reports for the year December 1979 to December 1980, and for the period December 1980 to June 1981, were not so favorable. For example, rating officers stated that Mr. Heim lacked initiative and aggressiveness, and noted that frequently he failed to complete mission tasks. The unit commander suggested to Mr. Heim that he be transferred out of the unit to a control group.

On June 6, 1981, Mr. Heim signed a 1AA Form 831 (Form 831 or Form) requesting reassignment. The Form included a box captioned "VOL ASGMT" (voluntary assignment). This box was marked. The reason for transfer given on the Form was "AR 140-10 Request of Commander." Department of the Army Regulation Number 140-10 is a regulation providing that such transfers must be voluntary.

The "Remarks" section of the Form contained the following statement written by Mr. Heim: "I am signing this form under duress, object to the judgment of my duty performance, and intend to appeal unfair action." Mr. Heim now states that he "felt coerced" by his commanders when presented with the Form 831, and that he believed he was being ordered to sign the Form.

In August 1981, Mr. Heim's attorney contacted a Member of Congress concerning the transfer. In response to the resulting congressional inquiry, the Army Inspector General investigated. He determined that Mr. Heim's performance was less than satisfactory, that he was counseled by his commander on his performance, and that attempts were made to find another position for him in the unit. The Inspector General's report concluded, "Inquiry did not substantiate that CPT Heim was unfairly treated or intimidated to leave the USAR. The matters surrounding Captain Heim's reassignment were handled within the prerogatives of command, and no violations of Army regulations or policy were evident."

On December 12, 1981, Mr. Heim was transferred to a USAR Control Group (Reinforcement). Thereafter, he did not participate in USAR sponsored or recognized activities, and earned no retirement points or pay.

Mr. Heim applied to the Army Board for Correction of Military Records (Board) in November 1983. He stated that his reassignment was involuntary, and sought correction of his records to show that he did not request a transfer to the control group.

The Board found that Mr. Heim's request for transfer was voluntary. It determined that Mr. Heim was not subject to duress, even though subjectively he might have believed that he was. The Board's

view was that this possibility did not alter the voluntary nature of the request.

Mr. Heim was considered for promotion in 1986 and 1987. He was discharged from the USAR on November 28, 1987, having been twice considered for promotion and not selected.

### Issues

Defendant argues that plaintiff fails to state a claim because reservists are paid only if they are ordered to perform and actually do perform duties. Federal law does not entitle reservists to compensation merely because they are reservists. Plaintiff was not ordered to serve in the control group, and in fact did not do so.

According to plaintiff, defendant's argument that he did not perform work in effect begs the question; i.e., had he not been involuntarily transferred, plaintiff would have continued to perform duties for which he would have been compensated. Plaintiff asks the court to focus on the alleged wrongful transfer on a "but for" or proximate cause basis.

Defendant also moves for summary judgment. Defendant argues (1) laches, in that Mr. Heim inexcusably delayed judicial remedy for over six years, to the detriment of the United States; (2) lack of justiciable issue, in that transfer of military officers is within the discretion of appropriate military officials; (3) failure of Mr. Heim to meet the heavy burden of producing "cogent and clearly convincing evidence" to reverse the Board; and (4) Mr. Heim's failure to mitigate damages. As plaintiff fails to state a claim under a pay mandating statute, we do not address these issues further.

### Discussion

#### 1.

The Tucker Act, 28 U.S.C. § 1491 (1988), permits claims against the United States "founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

The Tucker Act does not create a substantive right for money damages. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Plaintiff's right to recover must be founded upon the Constitution, a federal statute, or a regulation, which grants plaintiff, expressly or by implication, a right to be paid a sum certain. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

Thus, plaintiff must allege a statute or a regulation which creates a substantive right entitling him to money. If the statute or regulation being relied upon does not entitle plaintiff to money, then the court does not have subject matter jurisdiction. *Eastport*, 178 Ct.Cl. at 607, 372 F.2d at 1008. However, if the claim under a given statute or regulation is at least arguable, then the matter may be considered here. *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 125, 340 F.2d 663, 667, *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).

Mr. Heim relies upon the Reservists Pay Mandating Statute, 37 U.S.C. § 206 (1988), to create a substantive right enforceable against the United States for money damages. This statute entitles a reservist to pay under certain circumstances, as follows:

(a) Under regulations prescribed by the Secretary ... [a reservist] is entitled to compensation ...—

(1) for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or Holiday;

(2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe; or

(3) for a regular period of instruction that the member is scheduled to perform but is unable to perform because of physical disability resulting from an injury, illness, or disease....

Simply put, if a reservist performs his duties, he is entitled to compensation at the applicable rate under this statute. As the statute would permit back pay under appropriate circumstances, the plaintiff has shown subject matter jurisdiction in this court.

### 2.

The question then becomes whether plaintiff has stated a claim upon which relief can be granted. "[T]he question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action." *Ralston,* 169 Ct.Cl. at 124, 340 F.2d at 667 (quoting *Montana–Dakota Utilities Co. v. Northwestern Public Serv. Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951)).

Dismissal for failure to state a claim upon which relief can be granted is appropriate where a complaint asserts no facts which would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Chavez v. United States,* 15 Cl.Ct. 353, 356 (1988). In evaluating a Rule 12(b)(4) motion the court must assume all material factual allegations of the complaint to be true, and each must be construed in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *White Mountain Apache Tribe v. United States,* 8 Cl.Ct. 677, 681 (1985).

The court must consider whether defendant has established that there are no circumstances under which plaintiff would be entitled to relief. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. If the facts provide any basis upon which plaintiff might prevail, even though recovery appears remote, the motion must be denied. *Id.* Under the facts alleged by plaintiff, does the Reservists Pay Mandating Statute allow him recovery under any circumstances?

### 3.

The starting point in determining Congressional intent is the language of the statute itself. *Lewis v. United States,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). Absent a clear showing of contrary legislative intent, the plain meaning analysis of the statutory language in issue begins and ends the judicial inquiry. *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).

The language of the Reservists Pay Mandating Statute does not reveal an intent to compensate reservists who have not performed their duties, except when those reservists were scheduled to perform but were unable to because of injury, illness, or disease. 37 U.S.C. § 206(a)(3). The plaintiff does not allege that he was prevented from performing the duties for which he now seeks compensation, because of injury, illness, or disease.

While active duty officers are paid because of their status as such (*see* 37 U.S.C. § 204), "[u]nder the Reservists Pay Mandating Statute, a reservist is not entitled to compensation at the prescribed rate unless he is ordered to perform and actually performs the work." *Ayala v. United States,* 16 Cl.Ct. 1, 4 (1988) (citing *United States v. Wickersham,* 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906)); *see also Banks v. Garrett,* 901 F.2d 1084, 1087 (Fed.Cir.) *cert. denied,* — U.S. —, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). Compensation under this statute is based on performance.

After Mr. Heim was transferred to the control unit, he performed no services for which he could be compensated under the Reservists Pay Mandating Statute. We may speculate on his reasons, but the fact is that he did not participate in the new unit. If he sought subsequent transfers, he was not successful.

Plaintiff is seeking pay under a statute which requires that he perform duties to qualify. Mere status as a reservist is not compensable. As he did not so perform, he has no claim for which relief may be granted under the Reservists Pay Mandating Statute.

### 4.

We reviewed the Board's finding that plaintiff's transfer was voluntary. Plaintiff must show that the Board's finding was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Braddock v. United States,* 9 Cl.Ct. 463,

472 (1986); *Sanders v. United States*, 219 Ct.Cl. 285, 301, 594 F.2d 804, 811 (1979); *Skinner v. United States*, 219 Ct.Cl. 322, 333, 594 F.2d 824, 830 (1979).

The Board found that the evidence of record did not support plaintiff's claim of duress or unlawful command. Plaintiff's subjective belief that he was under duress did not alter the voluntary nature of his request for transfer; i.e., he was not ordered to complete the form.

"Duress or coercion is not measured by a plaintiff's subjective evaluation of his situation, but by an objective test consisting of three elements: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *O'Hanlon v. United States*, 11 Cl.Ct. 192, 198–99 (1986) (quoting *Fruhauf Southwest Garment Co. v. United States*, 126 Ct.Cl. 51, 62 (1953)).

The circumstances did permit an alternative. Plaintiff could have refused to sign Form 831. Also, the Board found that there was no coercion. The distinction between being coerced and thinking one is being coerced seems thin. However, we do not find that the Board's decision was arbitrary, capricious, unsupported by substantial evidence or contrary to law.

### CONCLUSION

■ Plaintiff does not allege facts sufficient to allow recovery in this court. The Reservists Pay Mandating Statute brings plaintiff's claim within our jurisdiction, but service as a reservist is required to qualify him for compensation. Plaintiff does not allege that he provided services for which he was not paid. Defendant's Rule 12(b)(4) motion to dismiss plaintiff's complaint for failure to state a claim is GRANTED. Plaintiff's complaint is dismissed. The parties will bear their own costs.