**Marcel H. BLAIS, Neptune–Benson, Inc., James H. Tilberry, and Joanne H. Tilberry, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 92–231C.

United States Court of Federal Claims.

May 31, 1994.

James H. Tilberry, Chagrin Falls, OH, for plaintiffs.

Grace Karaffa, Washington, DC, with whom were Asst. Atty. Gen. Stuart M. Gerson, and Vito J. DiPietro, Director, for defendant.

## OPINION

ROBINSON, Judge.

This matter is before the court on defendant's motion for summary judgment. Defendant moves the court, pursuant to Rule 56 of the Rules of the Court of Federal Claims (RCFC), for summary judgment on the ground that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. Plaintiffs challenge the motion, urging that the record does reflect genuine issues of material, fact precluding summary judgment. This Opinion explicates the ruling made from the bench on March 24, 1994, granting defendant's motion.

### *Factual Background*

On June 28, 1985, defendant, through the United States Air Force, contracted with Schafroth Construction Company (Schafroth), to provide and install five moveable stainless steel swimming pool bulkheads at the United States Air Force Academy, Colorado Springs, Colorado (the Air Force Academy).[1] The total contract amount of $468,-110.28 was paid in full in seven installments, the last of which was on November 6, 1986. On December 6, 1985, Schafroth subcontracted with Statewide Pools, Inc. (Statewide Pools), which, at the time, owned a pending patent application covering moveable swimming pool bulkheads, for a contract amount of $197,000.00.

The five swimming pool bulkheads at issue here are allegedly covered by United States Patent No. 4,991,239 (the '239 patent), issued to the inventors, plaintiff Marcel H. Blais and John F. Corna.[2] On January 15, 1982, the inventors assigned the application[3] for the '239 patent to Statewide Pools. On April 1, 1986, Statewide Pools in turn assigned the application[4] for the '239 patent to plaintiff James H. Tilberry.[5]

1. Air Force Contract No. F05611–85–C–0094 (the prime contract).

2. The '239 patent issued from United States Patent Application No. 821,010, which was a continuation of United States Patent Application No. 535,041, which was a continuation of United States Patent Application No. 337,592 (hereinafter collectively referred to as "the application for the '239 patent"), filed on January 21, 1986, September 23, 1983, and January 7, 1982, respectively.

3. United States Patent Application No. 337,592.

4. United States Patent Application No. 821,010.

5. On February 12, 1991, James H. Tilberry assigned the '239 patent to plaintiff Joanne H. Tilberry. On August 16, 1991, Joanne H. Tilberry granted an exclusive license under the '239 patent to Mr. Blais. This exclusive license was terminated on August 26, 1992, and on the same day, another exclusive license was granted to plaintiff Neptune–Benson, Inc.

Under its subcontract with Schafroth, Statewide Pools agreed to provide and install the five swimming pool bulkheads at the Air Force Academy, and to indemnify Schafroth and the Air Force Academy from any patent infringement arising out of operations of Statewide Pools on this project. On January 15, 1986, Statewide Pools notified Schafroth that it was scheduled to deliver the five bulkheads to the Air Force Academy in sections by the first week of March, 1986. Statewide Pools delivered all the materials for the five bulkheads to the Air Force Academy on or before March 11, 1986. On March 18, 1986, the Air Force Academy paid $170,-653.26 to Schafroth, which constituted payment in full for the bulkhead materials delivered by Statewide Pools.

Plaintiff Marcel H. Blais was a consultant to Statewide Pools from May, 1978, until October 28, 1986, when Statewide Pools filed for bankruptcy, seeking relief under the provisions of Chapter 7 of the Federal Bankruptcy Act. Further, Mr. Blais served as chief executive officer of Statewide Pools from April 11, 1984, until October 28, 1986. Mr. Blais "designed the five bulkheads installed at the Air Force Academy on or about August, 1986, supervised the preparation of engineering drawings for the bulkheads, and followed the progress of the manufacture, assembly, and installation of the bulkheads." P.App. 20–21.[6]

Schafroth paid Statewide Pools $171,-025.28, but failed to pay the final payment of $25,974.72 owed under the subcontract. The bankrupt estate of Statewide Pools sued Schafroth under its subcontract for the unpaid amount owed Statewide Pools and obtained a judgment for the full amount. However, since Schafroth has ceased operations

and is insolvent, Statewide Pools has been unable, to date, to collect on its judgment.

Plaintiffs filed a complaint[7] on April 1, 1992, seeking compensation pursuant to 28 U.S.C. § 1498 (1988), for the manufacture and use of the five swimming pool bulkheads allegedly covered by the '239 patent.[8] On March 15, 1993, defendant filed the instant motion for summary judgment. On May 20, 1993, plaintiffs filed their opposition to defendant's motion for summary judgment, and a second amended complaint, adding a contract claim against defendant under the Tucker Act, 28 U.S.C. § 1491 (1988). This court heard oral arguments relating to the motion on March 24, 1994.

### Contentions of the Parties

Defendant asserts that Statewide Pools' conduct established an implied license to use the bulkheads, which is a complete defense to a charge of infringement under § 1498. Defendant maintains that Schafroth's breach of the subcontract does not impair its ability to assert the license as a defense. Defendant adds that no agency relationship existed between Schafroth and defendant and, therefore, the facts alleged in the complaint constitute, at best, an implied-in-law contract over which this court has no jurisdiction.

Plaintiffs claim that defendant cannot establish that Statewide Pools impliedly licensed the assembly and use of the accused bulkheads since Schafroth breached its subcontract with Statewide Pools. Plaintiffs contend that defendant cannot invoke an implied license unless defendant acts as a surety for Schafroth under Schafroth's subcontract with Statewide Pools. Plaintiffs maintain that if defendant elects to disclaim responsibility under the subcontract, it has no

---

**6.** "P.App." refers to plaintiffs' appendix to plaintiffs' opposition to defendant's motion for summary judgment, filed on May 20, 1993.

**7.** The complaint was amended on December 3, 1992, to join plaintiffs Neptune–Benson, Inc., James H. Tilberry, and Joanne H. Tilberry. The complaint was also supplemented on December 3, 1992, to make of record the termination of the exclusive license to original plaintiff, Marcel H. Blais, and the exclusive licensing of additional plaintiff, Neptune–Benson, Inc.

**8.** Section 1498 provides, in pertinent part:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license or the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States [Court of Federal Claims] for the recovery of his reasonable and entire compensation for such use and manufacture.

privity to claim an implied license and must defend the infringement claim, as well as an independent claim for breach of contract under the subcontract. In this regard, plaintiffs assert that Schafroth was acting as defendant's agent and, therefore, Schafroth had the authority to enter defendant into a contract with Statewide Pools.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine issue as to any material fact," so that the moving party is "entitled to judgment as a matter of law." RCFC 56(c). RCFC 56, which closely follows Rule 56 of the Federal Rules of Civil Procedure, imposes an initial burden on the moving party to inform the court of the basis for its motion, and to demonstrate through its filings that no genuine issue of material fact exists as to its claim for relief. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the evidence in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied, even if no opposing evidence is presented. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). In viewing the movant's evidence, Rule 56 also requires that all factual inferences drawn from such evidence be viewed in the light most favorable to the non-movant, *i.e.,* plaintiffs in the instant matter. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bromley Contracting Co. v. United States,* 15 Cl.Ct. 100, 104 (1988). Furthermore, any doubt as to whether a genuine issue of material fact exists will be resolved in favor of the non-moving party. *Adickes,* 398 U.S. at 158, 90 S.Ct. at 1608. Thus, "it is axiomatic that, if the moving party fails to meet its initial burden under Rule 56(c), it has no entitlement to summary judgment." *Bromley Contracting,* 15 Cl.Ct. at 104.

On the other hand, once the moving party adequately meets its *prima facie* burden in establishing that no genuine issue of material fact exists, the burden of going forward shifts to the non-movant. RCFC 56(f). The non-moving party may not discharge this burden by "cryptic, conclusory or generalized responses ... or by remaining silent." *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). Rather, the party must present specific and credible facts that either tend to establish all the necessary elements of its case or its position, or raise a genuine issue of material fact. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. A dispute is *genuine* only if, on the entirety of the record, a reasonable finder of facts could resolve a factual matter in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). Material facts are those which the substantive law identifies as affecting the outcome of the suit. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Upon review of the record, the court finds that no material facts are in dispute. Accordingly, this case is appropriate for summary disposition.

## I.

The existence of an implied license is a question of law and, therefore, subject to summary disposition. *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986). In a suit for patent infringement, the alleged infringer, defendant in the present case, has the burden of establishing an implied license. *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 924 (Fed.Cir.1984). In order to grant an implied license, the circumstances of the sale of the item by the patentee must "plainly indicate that the grant of a license should be inferred." *Id.* at 925 (quoting *Hunt v. Armour & Co.,* 185 F.2d 722, 729 (7th Cir.1950)). Defendant argues that the entire course of conduct between the parties, especially delivery by Statewide Pools to the Air Force Academy of the bulkhead materials that conformed to the invention contained in the pending patent application amounts to an implied license.

The United States Supreme Court has recognized that "[n]o formal granting of a license is necessary in order to give it effect. Any language used by the owner of the patent, or any conduct on his part exhib-

ited to another from which that other may properly infer that the owner consents to his use of the patent [i.e., patented invention] ... constitutes a license...." *De Forest Radio Tel. Co. v. United States,* 273 U.S. 236, 241, 47 S.Ct. 366, 367, 71 L.Ed. 625 (1927). For example, "it is fundamental that sale of a patented article by the patentee or under his authority carries with it an 'implied license to use.'" *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 484, 84 S.Ct. 1526, 1531, 12 L.Ed.2d 457 (1964). Similarly, when a patent owner supplies the unpatented components of his or her invention to the government, the owner impliedly licenses the government to assemble and use those components according to the invention. *General Elec. v. United States,* 215 Ct.Cl. 636, 707, 572 F.2d 745, 784–85 (1978).

In *De Forest,* two patents were licensed by De Forest to the American Telephone and Telegraph Company (AT & T). The United States, being engaged in war, informed AT & T that it desired to have large numbers of the patented devices made for it by the General Electric Company and others. *De Forest,* 273 U.S. at 239, 47 S.Ct. at 366. AT & T replied that it would not interfere with the manufacture of the devices, "provided it were understood and agreed that [AT & T] 'waived none of its claims under any patents or patent rights owned by it on account of said manufacture, and that all claims under patent rights and all patent questions be reserved and later investigated, adjusted and settled by the United States.'" *Id.* The United States accepted this plan. *Id.* Thereafter, AT & T furnished information, drawings, and blueprints to General Electric, and permitted representatives and experts of the United States and of General Electric to witness and study the manufacture of the devices by AT & T. *Id.* The Supreme Court found that these circumstances evi-

denced that AT & T not only had fully consented to the making and using by the United States of the patent, but by aiding such making and using, had licensed the patent as well. *Id.* at 242, 47 S.Ct. at 367. The Court observed that AT & T had only postponed, for future settlement, what reasonable compensation, if any, it might claim for the license. *Id.*

■ Finding an implied license rests upon on the doctrine of equitable estoppel. *See Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1559 (Fed.Cir.1983). For equitable estoppel to apply, the party asserting equitable estoppel must have committed itself to act, and indeed acted, as a direct consequence of another's conduct. *Dickerson v. Colgrove,* 100 U.S. 578, 580, 25 L.Ed. 618 (1879). "Thus, an implied license cannot arise out of the unilateral expectations or even reasonable hopes of one party. One must have been led to take action by the conduct of the other party." *Stickle,* 716 F.2d at 1559.

■ To bring itself within this doctrine, defendant focuses on the conduct of Statewide Pools. Statewide Pools owned the pending patent application covering the invention at issue when it delivered all the materials for the five bulkheads to the Air Force Academy in March of 1986.[9] The five bulkheads were installed by Statewide Pools, to the satisfaction of the Air Force Academy, during the month of August, 1986. Plaintiff, Mr. Blais, as Statewide Pools' chief executive officer, designed the five bulkheads, supervised the preparation of engineering drawings for the bulkheads, and followed the progress of the manufacture, assembly, and installation of the bulkheads. P.App. 20–21. Furthermore, Statewide Pools agreed to indemnify Schafroth and the Air Force Academy from any patent infringement arising out

9. Plaintiffs have failed to place this fact in issue. This fact was alleged in the Defendant's Proposed Findings of Uncontroverted Fact, and supported by a letter dated March 11, 1986, which certifies that all the materials for the bulkheads have been delivered to the Air Force Academy. In response to defendant's assertion, in Plaintiffs' Statement of Genuine Issues, plaintiffs admit that this is not a material fact. Moreover, plaintiffs offer nothing to controvert defendant's certified letter. At oral argument, plaintiffs admitted

they did not know if they could put this fact in issue, but argued, nevertheless, that they should be given the chance to conduct discovery to determine whether they could put it in issue. The court cannot tolerate such a contrived fishing expedition. Plaintiff Mr. Blais, as Statewide Pools' CEO and the supervisor of this project, was in a position to know the facts surrounding the delivery of the bulkhead materials. Plaintiffs' eleventh hour attempt to create a factual issue where none exists must fail.

of operations of Statewide Pools on this project. Here, as in *De Forest*, the circumstances show that Statewide Pools not only fully consented to the assembly and use by the Air Force Academy of the five bulkheads, but also aided such assembly and use. This conduct led defendant to commit to a course of infringing action and, therefore, the court infers the grant of a license.

■ Plaintiffs next contend that due to Schafroth's breach of its subcontract with Statewide Pools, there is a failure of consideration and, therefore, defendant cannot benefit from an implied license. Plaintiffs argue that the only way defendant may rely on an implied license is by compensating plaintiffs under the terms of the subcontract. Plaintiffs rely upon *De Forest*, where the Supreme Court held that where an implied license is found to have been granted, the owner of the patent is entitled to reasonable compensation. Plaintiffs thereby argue that to avoid an infringement suit, the implied licensee must honor its obligations in contract. This is an incorrect reading of *De Forest*. *De Forest* merely states that an implied license is a complete defense to an action for infringement, and that any action brought after the granting of an implied license must be contractual in basis. *De Forest*, 273 U.S. at 241, 47 S.Ct. at 367.

In the instant case, although the license was implied to defendant, Statewide Pools' contract was with Schafroth. Therefore, plaintiffs' contract claim is with Schafroth and not defendant.[10] "[W]here the patentee has authorized the use of the patents by the contractor, either by license or otherwise, there is no remaining cause of action against the government under section 1498, even where the contractor has failed to pay the royalties required by its agreement with the patentee." *W. Vinten, Ltd. v. United States*, 213 Ct.Cl. 759, 761, 566 F.2d 1188 (1977); *see, e.g., Roberts Dairy Co. v. United States*, 208 Ct.Cl. 830, 852–53, 530 F.2d 1342, 1357 (1976). In *Roberts Dairy*, the government awarded contracts for the production of egg products to Monark Egg Products, Inc. (Monark). Monark then executed a license agreement with Roberts Dairy granting Monark a nonexclusive license to produce egg products under a number of different patents, including the two patents in suit. Monark produced the egg products and delivered them to the government. Roberts Dairy brought suit against the United States in the United States Court of Claims under 28 U.S.C. § 1498, for the unauthorized use and manufacture by or for the United States of certain egg products allegedly covered by its patents. The court found that suit against the United States under § 1498 "is proper only when the alleged infringement is accomplished by the United States, or a United States contractor, without a license to practice the invention." *Roberts Dairy Co.*, 208 Ct.Cl. at 852, 530 F.2d at 1357. Accordingly, the court held that since Monark was licensed under the patents in suit, plaintiffs/licensors were barred from bringing a suit against the United States even if Monark had failed to pay royalties to plaintiffs as required by their license agreement. *Id.*

In the case at bar, an implied license arose and may be asserted by defendant as a defense even though Schafroth failed to pay Statewide Pools the final $25,974.72 of the subcontract. As discussed above, Statewide Pools, through its conduct and by its agreement with Schafroth, authorized the use of the bulkheads by Schafroth and by defendant. Under the reasoning in *Roberts Dairy Co.*, Schafroth's breach of the subcontract does not impair defendant's ability to assert the license as a complete defense under § 1498.

## II.

■ Plaintiffs also assert an independent action for breach of contract under the subcontract. There is no contractual relationship between plaintiffs and defendant and, therefore, this claim must fail. "The government consents to be sued only by those with whom it has privity of contract, which it does not have with subcontractors." *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984). A subcontractor who supplies materials for use in a government con-

---

10. Statewide Pools has obtained a judgment for $25,974.72 against Schafroth. Only after discovering that Schafroth is insolvent did plaintiffs bring suit against the government.

tract is not in privity with the government. *Severin v. United States,* 99 Ct.Cl. 435, 442, 1943 WL 4198 (1943), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). In order for a subcontractor to recover, from the government, amounts owed to it by the prime contractor, the subcontractor must prove the existence of some type of contract between itself and the United States. *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 8, 479 F.2d 1334, 1337 (1973).

■■■ Thus, plaintiffs must show the existence of a contract between Statewide Pools and defendant. This court has jurisdiction over "any express or implied contract," 28 U.S.C. § 1491(a)(1); however, implied contract claims include only those contracts implied-in-fact, and not those contracts implied-in-law. *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983); *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Porter v. United States,* 204 Ct.Cl. 355, 365 n. 5, 496 F.2d 583, 590 n. 5 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975). Implied-in-law contracts are based upon a theory of unjust enrichment or *quantum meruit.* Relief is granted in order to prevent injustice, even though the parties never entered an agreement. *Chavez v. United States,* 15 Cl.Ct. 353, 357 (1988). In contrast, an implied-in-fact contract requires proof of the same elements necessary to establish an express contract—mutuality of intent, offer and acceptance, lack of ambiguity, and consideration. *Juda v. United States,* 6 Cl.Ct. 441, 452 (1984). Plaintiffs have failed to show any of these elements and, therefore, have failed to show the existence of an implied-in-fact contract.

■■■ Furthermore, a contract with the United States can only exist if it is entered into with an agent of the United States with actual authority to bind the government in contract. *El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *Chavez,* 15 Cl.Ct. at 357. Plaintiffs allege that Schafroth was the agent of the Air Force Academy under the prime contract and, therefore, was authorized to enter the United States into a binding con-

tract. In order to establish an agency relationship between a prime contractor and the government, a subcontractor must establish that:

> [T]he prime contractor was (1) acting as a *purchasing* agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price.

*United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1551 (Fed.Cir.1983).

■■■ None of these factors is present in this case. Even if the court assumes, for discussion purposes only, that an agency relationship can be implied under the provisions of the prime contract, plaintiffs have failed to assert a contractual provision providing that defendant is directly liable to a subcontractor for the goods or services supplied to the Air Force Academy. Schafroth, therefore, was not acting as an agent of defendant for the purpose of establishing privity between defendant and Statewide Pools. Accordingly, the court finds that no contractual relationship existed between Statewide Pools and defendant.

## CONCLUSION

For the foregoing reasons, the court finds that plaintiffs impliedly licensed defendant to use the invention at issue, and that Schafroth's breach of the subcontract in no way hinders defendant's ability to assert the implied license as a complete defense to plaintiffs' § 1498 claim. Defendant is under no obligation to act as a surety for the subcontractor, nor must defendant pay royalties or other fees owed to a subcontractor by a prime contractor. Further, Schafroth was not an agent of defendant and, therefore, no privity of contract existed between plaintiffs and defendant. Accordingly, plaintiffs' claim for breach of contract must fail.

Defendant's motion for summary judgment is granted. The Clerk of the Court is direct-

ed to dismiss the complaint with prejudice. No costs.

